COMM'TH EX R. v. J. J. DETWILLER ET AL.
COMM'TH EX R. v. C. L. HEMMINGWAY ET AL.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 13, 1889—Decided January 6, 1890.
[To be reported.]

1. One who is a citizen of the United States, though not a citizen of Pennsylvania, may become a stockholder in an agricultural or scientific association incorporated by the Court of Common Pleas under the acts of October 13, 1840, P. L. (1841) 5, and February 20, 1854, P. L. 90, when there is nothing in the charter requiring shareholders to be citizens of the state.

2. In Pennsylvania, a resident alien friend may deal as freely in all forms of property, whether personal or real, " as any natural born citizen: " Section 1, act of February 10, 1807, 4 Sm. L. 362; wherefore, in the absence of any organic requirement that shareholders shall be citizens, a resident alien friend may become a shareholder in such association.

3. Though, under said statutes, the advantage of corporate powers were reserved in the first instance for citizens of the state, yet when they have once been granted, there is no restriction put upon their proper exercise by any citizen of the United States, or by an alien friend, subsequently becoming the owner of shares in such an association.

4. The non-resident or alien friend stockholder takes his shares with all the rights and privileges which pertain to them in the hands of a citizen; he may vote upon them, and, where no other qualification than the ownership of shares is required of directors, he may lawfully become a director in such an association.

5. The regulations of such association providing that stockholders shall have one vote for each share held by them up to ten shares, fixing the proportion which their votes shall bear to their shares above that number, and allowing them to vote by proxy when not present, is reasonable, uniform, conflicting with no law, and binding upon all shareholders.

6. Under a by-law of such an association providing that " when any director shall die, resign, neglect to serve, or remove out of the county, the board may proceed to supply the vacancy," the board cannot create a vacancy by ousting a director because of an alleged but undetermined ineligibility of the incumbent.

7. Legal questions must be determined by the courts: questions of fact, such as the existence of an actual vacancy by removal after election, or by neglect of the duty to serve, may be settled by the directors, after due notice and hearing, and the resulting vacancies, if any, filled by them; but this is the extent of their powers in the premises.

Opinion of Court below.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 38, 68, 76 January Term 1889, Sup. Ct.; court below, Nos. 23 April Term 1887, and 23 October Term 1888, C. P.

On May 9, 1887, upon the suggestion and complaint in the name of the commonwealth of Asa W. Dickinson, H. Eugene Hamilton, John A. Shawde and H. Mellick, filed to No. 23 April Term 1887, court below, a rule to show cause was made absolute and a writ of quo warranto issued against John J. Detwiller, Joseph M. Hackett, Thomas Rinck, John Bacon and James A. Edelman. Answers having been filed by the respondents, issue was joined, and the cause was called for trial before a jury on January 11, 1888, when by agreement of the parties it was submitted to the decision of the court, without a jury, under the act of April 22, 1874, P. L. 109.

The facts and the questions of law involved fully appear in the opinion of the court, REEDER, J., filed on August 16, 1888:

This cause was called for trial last January, and after the conclusion of the evidence it was agreed that a juror should be withdrawn and the case submitted to the court under the act of April 22, 1874.

The Farmers & Mechanics Institute of Northampton county was incorporated by the Court of Common Pleas of Northampton county on April 25, 1856. It is provided by the charter, " that the members of the association shall elect fifteen of their number to be a board of directors, who shall within ten days after their election divide themselves by lot into three classes of five each. The first class shall serve for one year, the second class for two years, and the third class for three years, from the second Tuesday of January next. The mode of conducting the elections and for filling vacancies by death or by resignation, and the duties of the officers, shall be provided by resolutions or by-laws."

On January 11, 1887, that being the second Tuesday of January, the terms of five directors expired, and the members of the corporation met for the purpose of holding an election to supply the vacancies. At that election Asa W. Dickinson, A. S. Deichman, George E. Sciple, Peter Robinson, John A.

Shawde and H. Eugene Hamilton each received 390 votes; William R. Wilson received 388 votes; and John J. Detwiller, J. M. Hackett and Thomas Rinek each received 232 votes, and John Bacon 234 votes. Howard Mellick, one of the relators, was elected a director to serve three years, at a meeting of the members of the said corporation held on the second Tuesday of January, 1886. James A. Edelman, one of the respondents, was elected a director on the second Tuesday of January, 1883, and was re-elected again for a term of three years on the second Tuesday of January, 1886. He owned at that time two shares of stock. The stock was sold to Jacob Hay on December 21, 1886, and the stock was delivered, with a power of attorney for the transfer of the stock upon the books of the corporation, to Jacob Hay upon the same day. This was all the stock owned by James A. Edelman at that time. The transfer of this stock was not made on the books of the corporation until February 1, 1887. On that same day, viz.: February 1, 1887, Mr. Edelman purchased and had transferred to him on the books of the corporation two other shares of stock which he held up to and at the time of the trial.

All of the relators are residents of the state of New Jersey, and were so at the time of their election. They are all stockholders in the corporation. Asa W. Dickinson held 110 shares of stock; H. E. Hamilton, 141 shares; John A. Shawde, 1 share, and Howard Mellick, 1 share. Of the votes cast for those of the relators who were voted for and declared elected by the judges of election on January 11, 1887, 339 were cast by Thomas A. H. Hay by virtue of proxies legally executed and in proper form, and of these, 251 votes were cast by virtue of proxies executed by stockholders not citizens of the state of Pennsylvania, viz.: for Asa W. Dickinson 110 votes, and H. E. Hamilton 141 votes. At the election, one vote was cast for each share of stock that was voted for, and was so counted by the judges of election.

Fourteen of the stockholders were present at said meeting, five of whom voted for the relators and nine for the respondents. The proxies of six others of the stockholders were held by Thomas A. H. Hay, the votes upon which were cast for the relators. So that of the individual stockholders actually present and voting (without reference to the number of shares

held by each of them), the majority voted for the respondents. Of the individual stockholders present in person and represented by proxy, a majority voted for the relators. A majority of the stock voted by stockholders actually present was voted for the respondents. A majority of all the stock voted by the stockholders present and by proxies was voted for the relators.

The by-laws of the corporation contain the following provision: "Section 7. When any director shall die, resign, neglect to serve or remove out of the county, the board may proceed to supply the vacancy by the election of a new director to serve until the next annual election, when the members of the institute shall elect one for the unexpired term."

On February 5, 1887, there was an adjourned meeting of the board of directors, at which the president pro tem. announced "that inasmuch as four persons, not residents of Northampton county, nor citizens of Pennsylvania, had been returned as elected to the board of directors, and inasmuch as the by-laws of the said institute render it impossible for such persons to sit as directors, he declared the seats vacant and announced that it was in order to supply four vacancies in the board by election, those elected to serve according to the by-laws until the next annual election," etc. Thereupon the relators withdrew from the meeting and left the room. The board then adopted the following resolution: "Resolved, That we proceed to the election of four directors to fill as many vacancies in the board, as provided by the by-laws." They then elected John Bacon, John J. Detwiller, Joseph M. Hackett and Thomas Rinek, directors. They have since that time acted, and at the time of the impetration of this writ were acting, as members of the board of directors by virtue of said election.

On April 11, 1884, the by-laws of the said corporation were amended to read as follows: "Section 12, article I. In all elections members shall be entitled to one vote for every share of stock held by them respectively, which may be voted either in person or by proxy."

The legal questions raised by the facts as found by the court in this cause are:

1. Whether under the law of Pennsylvania persons not citizens of the state are eligible to act as directors in corporations such as this?

2. Whether under the law of Pennsylvania, and the charter of this corporation, stockholders, not citizens of the state, have a right to vote at elections for directors?

3. Whether under the by-laws of this company, persons, not citizens of the county, are eligible to vote as directors?

4. Whether stockholders had a right to vote at an election by proxy?

5. Whether each stockholder was entitled to cast a vote for each share of stock held by him, or whether each member was entitled to one vote, and only one vote, without regard to the number of shares of stock he might own.

There is one other question involved in this cause, besides those which we have already stated, which we will consider and dispose of first. James A. Edelman had been a stockholder in the corporation and was elected a director on December 21, 1886. He sold and delivered his stock to Jacob Hay, together with a power of attorney for its transfer. The stock still stood in his name on the books of the company at the time of his election and afterward. On February 1, 1887, when it was transferred to Jacob Hay, he purchased and had transferred to himself two other shares of stock. Did such sale to Jacob Hay ipso facto devest him of the authority to act as a director? . . . . .

James A. Edelman was the legal owner of two shares of stock until February 1, 1887; on that day two shares of his stock were transferred to Jacob Hay and two other shares of stock were transferred to him. I do not know whether it appears in evidence which transfer was made first. Nor does it matter. Having been made upon the same day, in the contemplation of the law they were simultaneously made. This view of this question, so far as it affects James A. Edelman, disposes of it. And it is, therefore, unnecessary for us to consider whether he, having divested himself of his stock, could, by the acquisition of other stock at a date prior to the filing of the suggestion for this writ, rehabilitate himself. The writ as to him must be dismissed.

Under the laws of Pennsylvania and the charter of this company, can persons not citizens of the state act as directors?

By the act of October 13, 1840, § 13, P. L. (1841) 5, it was provided that when any number of persons, citizens of this

commonwealth, are associated or mean to associate for any literary, charitable or religious purpose, or for the purpose of forming any fire engine or hose company, or beneficial society, such associations could be incorporated by the courts of Common Pleas. This was virtually a re-enactment of the act of April 6, 1791, together with its supplement of April 8, 1833, P. L. 238; the only material difference being that in the earlier act the power to incorporate was vested in the governor, while in the later act it was in the Court of Common Pleas. The act of February 20, 1854, P. L. 90, extended the power of the court under the act of 1840 to the incorporation " of societies for the promotion of science and agriculture, to cemeteries or burial associations, and to societies for the detection of thieves and recovery of stolen property." It was under the act of 1840, with its supplement of 1854, that the Farmers & Mechanics Institute of Northampton county was, on April 25, 1856, created a body corporate by the Court of Common Pleas of Northampton county. It is contended by the respondents that the act of assembly under and by virtue of which the company was incorporated was confined to citizens of the state of Pennsylvania, and that therefore the membership in the corporation must be restricted to citizens of Pennsylvania.

It is undoubtedly true that the courts had no power to incorporate, under the act of 1840 and its supplement, any association of persons other than citizens of Pennsylvania. But, must the membership now, since its incorporation, be restricted to those only who are citizens of the state?

Corporations are of two kinds; those in which the members have a personal right which cannot be transmitted by sale, bequest, or inheritance, and those in which the members have a right of property. In the former, the right being merely personal and one which terminates by death or removal and which cannot be made the subject of sale, such as beneficial, literary and religious associations, the restriction of membership to citizens of the state or to those of a certain class, is in contravention of no constitutional provision, and such membership can therefore be restricted, limited and restrained. But it is not so with corporations which are in the nature of trading corporations, or where there may be profits to be divided, or where the membership by its organic law carries with it such a right of

property as may be sold, bequeathed or inherited.    To the latter class this company belongs.

The charter declares "That we citizens of the United States." By its terms there was no limitation other than that, to membership. Provision was made in the charter for the division of all excess of income as dividends upon the stock, as well as the division of the property at the dissolution of the corporation. It was organized for the purpose of giving exhibitions of agriculture and mechanical products, and charging admission fees to such exhibitions. The charter provided for issuance of stock at the subscription price of $25 a share, "the aggregate subscriptions of which shall constitute the capital stock of the company, which shall be invested for promoting the object of the association." "The object of the association shall be to promote agricultural and mechanical science and domestic economy, by exhibitions, premiums, lectures, essays, or such other lawful means as shall best accomplish these objects."

The second section of article IV. of the constitution of the United States provides: "The citizens of each state shall be entitled to all privileges and immunities of the citizens of the several states."

"Attempts will not be made to define the words, privileges and immunities, or to specify the rights which they are intended to secure and protect, beyond what may be necessary to the decision of the case before the court. . . . . It will be sufficient to say that the clause plainly and unmistakably secures the right of citizens of one state to pass into any other state of the Union, for the purpose of engaging in lawful commerce, trade or business without molestation, to acquire personal property, to take and hold real estate, to maintain actions in the courts of the state, and to be exempt from any higher taxes or excises than are imposed by the state upon its own citizens: " Ward v. Maryland, 12 Wall. 418. " The inquiry is, what are the privileges and immunities of the citizens of the several States? . . . . They may all be comprehended under the following general heads : protection by the government, the enjoyment of life and liberty, with the right to acquire and possess property of every kind. . . . . To take, hold and dispose of property either real or personal: " Corfield v. Coryell, 4 Wash. C. C. 380-1. " The complainants contend that the seven or

thirteen persons, mentioned in the law, who are to join in the articles of association, must be citizens of this state, and that the legislature did not intend to confer the privileges upon others. . . . . The legislature has not attempted to make any discrimination in the law against citizens of other states. The term it uses is 'persons.' Citizens of other states are, by virtue of the constitution of the United States declaring that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states, entitled to all the privileges to which citizens of this state are entitled under the law:" Central R. of N. J. v. Penna. R. Co., 31 N. J. Eq. 486. To hold, therefore, that no one could hold shares of stock in the Farmers & Mechanics Institute by purchase, inheritance or bequest, except citizens of the state of Pennsylvania, would be in contravention of the express provisions of the constitution of the United States.

It was ingeniously and ably argued by the counsel for the respondents that the charter made a distinction between the "members" and "stockholders" of this corporation; that all those who held stock were stockholders, and all stockholders residents of the state of Pennsylvania were members. A careful examination of the charter makes it appear that there is nothing in this contention, but that the words "member" and "stockholder" are used interchangeably. If their position is correct, then, upon the dissolution of the company, the property would be divided among the members, to the exclusion of the stockholders. This statement shows the absurdity of such contention. We conclude, therefore, that the relators are members and stockholders of the Farmers & Mechanics Institute.

It is provided by the charter that "the members of the association shall elect fifteen of their number to be a board of directors," etc., etc. There is no provision in the charter anywhere defining the qualification of a director other than this, which makes it necessary for him to be a "member." We have already declared that in our opinion these relators were members of this association, and therefore eligible under the charter for election as directors. Is there any provision anywhere in the laws of Pennsylvania making them ineligible as directors? By the act of April 10, 1868, P. L. 80, it is provided: "It may be lawful from and after the passage of

this act for any corporation chartered or existing under the laws of this state to determine by a vote of its stockholders, at a meeting duly called for that purpose, the number of directors which shall thereafter govern their affairs; provided always that the said number shall in no event exceed fifteen nor be less than five directors; and provided further that the majority of said directors and officers shall be and remain residents of the state of Pennsylvania during the discharge of their duties." If this act has any application to this company, it would not affect the right of these relators to act as directors, as the other eleven directors are citizens of the states of Pennsylvania. We can find no other law which would prevent their acting. We therefore hold that stockholders not citizens of the state not only have a right to vote for directors, but that they are also eligible to act as such, so long as they continue a minority of the board.

Are these relators qualified to serve as directors under the by-laws of this company?

Among the by-laws is found the following: "Article 1, § 7. When any director shall die, resign, neglect to serve, or remove out of the county, the board may proceed to supply the vacancy, by the election of a new director to serve until the next annual election, when the members of the institute shall elect one for the unexpired term."

It will not be necessary for us here to pass upon the validity of this by-law, to determine whether the board of directors had the power to pass it, or whether it is unreasonable and therefore void. Was it ever violated by these relators? It is in restraint of the rights of certain members to sit in the board of directors and have a voice in the management of property in which they have an interest, and must therefore be strictly construed. The only portion of the by-law which it is contended has any application to this case, is that which gives the board the power to create a vacancy whenever a director moves out of the county. Neither of these relators have ever done that. They were non-residents of the county at the time of their election, a contingency which this by-law does not meet, and which probably it was never intended to meet. The success of any institute, such as this, depends upon the local interest which is taken in it. A man who will contribute largely to

make it successful, so long as he resides in the vicinity, may no longer be useful if he moves away. In the event of his removal, therefore, the board may fill his place. It may be politic —indeed the history of the company shows that for many years they considered it so—to elect as directors and officers persons, who, at the time of their election, were non-residents of the county. There can be no objection to this. This by-law does not make such election illegal.

Had the stockholders of this company a right to vote by proxy?

The charter contains no provision directly authorizing the casting of votes by proxy, but we find in it the following provision: " The mode of conducting elections and for filling vacancies by death or resignation, and the duties of the officers, shall be provided for by resolutions and by-laws." In the by-laws we find the following: " Article I., § 12. In all elections members shall be entitled to one vote for every share of stock held by them respectively, which may be voted either in person or by proxy." The evidence discloses that 339 of the votes cast for the relators were cast by proxy. If these votes are illegal then judgment must be entered for the respondents.

The right to vote by proxy is not a common law right. The authority to so vote must be conferred by proper provision somewhere. In this corporation the charter confers the power to provide for the mode of conducting elections by by-laws, and we also find a by-law authorizing votes to be cast by proxy. Is this sufficient? The charter confers upon the company the right to regulate the mode of conducting elections; the company passed, in pursuance of this authority, the by-law authorizing voting by proxy. This by-law was certainly within the provision of the charter authorizing the regulation of the mode of conducting elections.

In Cook on Stockholders, § 610, the author says: " When the charter is silent, the right to vote by proxy may in the absence of statutory provision be conferred by a by-law." Chancellor WALWORTH says: " The right of voting by proxy is not a general right, and the party who claims it must show a special authority for it, . . . . . and it is possible that it might be delegated in some cases by the by-laws of a corporation, where express authority was given to make by-laws regulating the manner of voting:" Phillips v. Wickham, 1 Paige 590. In the

case of State v. Tudor, 5 Day 329 (5 Am. Dec. 162), the sole
authority of the members of a corporation to vote by proxy was
in a by-law.    The court held such by-law conferred the right.
In Morawetz on Corporations, § 486, the writer says : " That the
right of voting by proxy may be conferred through a by-law
adopted by the majority, appears to be reasonably well settled."
That the right of voting by proxy may be conferred by a by-law
seems inferentially to have been recognized by the Supreme
Court of this state in the case of Commonwealth v. Bringhurst,
103 Pa. 134.    Chief Justice MERCUR says: " As the relators
cannot point to any language in the charter expressly giving a
right to vote by proxy, and as it is not authorized by any by-
law, they have no foundation on which to rest their claim."
In view of these authorities I conceive it to be lawful for the
members of the Farmers & Mechanics Institute under their
by-laws, to vote by proxy, and that the votes so cast at the
election on January 11, 1887, were legal votes entitled to be
counted for the persons for whom they were cast.

Had each stockholder a right to cast a vote for each share
of stock held by him ; or was each member entitled to one
vote and only one, regardless of the number of shares of stock
he held?

Under the act of October 13, 1840, among the enumeration
of powers conferred, we find this provision : " and shall be au-
thorized and empowered, and they are hereby authorized and
empowered to make rules, by-laws and ordinances and do
everything useful for the good government and support of
said corporations respectively ; provided, also, that the said by-
laws, rules and ordinances, or any of them, be not repugnant
to the constitution and laws of the United States, to the con-
stitution and laws of this commonwealth, or to the instrument
upon which the said corporations respectively are as aforesaid
formed and established."    In the charter of this corporation
we find the provision that " the mode of conducting elections
. . . . . shall be provided for by resolution or by-laws."    In
the by-laws, we find: " Article I., § 12. In all elections mem-
bers shall be entitled to one vote for every share of stock held
by them respectively, " etc.

A by-law not inconsistent with the constitution and laws of
the United States, or the constitution and laws of Pennsyl-

vania, or with the charter, is a valid, lawful by-law. In Morawetz on Corporations, § 476, the author says : " It seems that at common law each shareholder is entitled to cast but one vote. But there are good reasons for holding that this rule has no application to ordinary joint stock business corporations of the present day." In Cook on Stock and Stockholders, § 608, we find the following : "At common law, in public or municipal corporations, each elector has one vote and only one. This rule has been applied to stockholders in a private corporation, and it has been held that such a shareholder has but one vote, although he be the owner of many shares of the capital stock. Almost universally, however, the charter of a company, or a statute, or a constitutional provision, gives to each share of stock one vote at every corporate meeting, and at the present day it is probable that no court, even in the absence of such provision, would uphold a rule which disregards in the matter of voting the number of shares which the shareholder holds in the corporation."

If this provision in regard to stock voting had been incorporated in the charter, there could be no doubt that it would confer upon the stockholders the right to cast one vote for each share of stock held by them : Vide Commonwealth v. Bringhurst, 103 Pa. 134. The charter, however, contains the provision that the method of conducting the elections shall be provided for by the by-laws, and this by-law is adopted by the company in accordance with this authority. Is not this as binding upon the stockholders of the corporation as if it were embodied in the charter itself ?

The respondents contend that as the charter makes a distinction between members and stockholders, therefore, this question falls within the ruling of Commonwealth v. Gill, 3 Wh. 248. The difficulty with this proposition is in its premise. The charter, as we have already said, does not make a distinction between " members " and " stockholders," but uses the terms interchangeably. Within the provisions of this charter the two terms " members " and " stockholders " are meant to indicate the same class of individuals.

For the reasons hereinbefore given, we find, therefore, that on January 11, 1887, the relators, Asa W. Dickinson, H. E. Hamilton and John W. Shawde, were lawfully elected direc-

tors, and that on the second Tuesday of January, 1886, Howard Mellick was lawfully elected a director in the Farmers & Mechanics Institute of Northampton County, and that they were entitled to such offices on February 5, 1887, when their offices were declared vacant, and John J. Detwiller, John Bacon, J. M. Hackett and Thomas Rinek, four of the respondents elected in their stead.

Now, August 16, 1888, it is considered and adjudged that the said John J. Detwiller, John Bacon, J. M. Hackett and Thomas Rinek are guilty of usurping, intruding into and unlawfully holding and exercising the offices of directors of the Farmers & Mechanics Institute of Northampton County, and the court here do give judgment that the said John J. Detwiller, John Bacon, J. M. Hackett and Thomas Rinek be ousted and altogether excluded from said offices; and the court do further decide that the said Asa W. Dickinson, H. E. Hamilton, John A. Shawde and Howard Mellick, the relators, were legally elected and entitled to the said offices of directors of the said corporation; the respondents, John J. Detwiller, J. M. Hackett, John Bacon and Thomas Rinek to pay the costs. Judgment is entered in favor of James A. Edelman, one of the respondents.

—On September 18, 1888, upon a like suggestion and complaint filed by Thos. A. H. Hay, Jacob Hay, William O. Hay, Albert H. Robinson, A. S. Deichman, Peter Robinson, Howard Mellick, William R. Wilson and George E. Sciple, to No. 23 October Term 1888, court below, a writ of quo warranto was issued against C. L. Hemmingway, Thos. Rinek, John A. Seitz, Philip F. Stier, Nathan H. Heft, John J. Detwiller, John Bacon, Asher J. Odenwelder, William Young and Samuel Drake.    Answers having been filed and issue joined, the cause was called for trial on October 20, 1888.    A verdict having been returned, judgment was entered in accordance therewith on October 22, 1888, as follows :

The said Charles L. Hemmingway, Thomas Rinek, John A. Seitz, Philip F. Stier, Nathan H. Heft, John J. Detwiller, John Bacon, Asher J. Odenwelder, William Young and Samuel Drake having been found guilty, by the verdict of the jury, of usurping and intruding unlawfully in the office of directors of

Opinion of Court below.

the Farmers & Mechanics Institute of Northampton County, the court therefore give judgment that the said defendants be ousted and altogether excluded from the said offices of directors of said corporation; and the court do further decree that the offices of directors for three years shall be held by Thomas A. H. Hay, Jacob Hay, William O. Hay and Albert H. Robinson, their terms of office to date from January 10, 1888; and that the office of directors of the said corporation to serve for the term of two years from January 10, 1888, shall be held by A. S. Deichman; and that William R. Wilson and George E. Sciple shall hold the offices of directors of the said corporation for three years from the second Tuesday in January, 1887; and that Howard Mellick shall hold the office of director of said corporation for three years from the second Tuesday of January, 1886; and that Peter Robinson is not eligible to serve as a director for the said corporation for the reason that he is not a citizen of the United States; and the court do further give judgment against the said defendants for the costs of suit.

In Commonwealth ex rel. v. Detwiller et al. the defendants thereupon took the appeal to No. 38, specifying that the court erred, inter alia:

1. In holding that persons not citizens of Pennsylvania are eligible to the office of directors of this institute.

2. In holding that, under the law of Pennsylvania and the charter of this corporation, stockholders not citizens of said state have a right to vote for directors of this institute.

5. In holding that stockholders had the right to vote by proxy.

6. In holding that stockholders were entitled to cast one vote for each share of stock held by them.

7. In not deciding that the by-law, article I., § 12, which reads: "In all elections members shall be entitled to one vote for every share of stock held by them respectively, which may be voted either in person or by proxy," is void because the same is in conflict with the charter, which says that "the members of the association shall elect the board of directors."

8. In holding that the qualifications of voters prescribed in the charter, to wit, that the members of the association shall

elect fifteen of their number to be a board of directors, could be legally changed by a by-law.

13. The court, referring to the by-law, article I., § 7, which reads as follows: "When any director shall die, resign, neglect to serve or remove out of the county, the board may proceed to supply the vacancy by the election of a new director to serve until the next annual election, when the members of the institute shall elect one for the unexpired term," erred in deciding that the same was not violated by the relators when they severally took upon themselves the offices of directors, they not being at the time of their election citizens or residents of Northampton county or of Pennsylvania. The court should have decided that according to said by-law the seats of the four relators, Hamilton, Shawde, Dickinson and Mellick were vacant.

In Commonwealth ex rel. v. Hemmingway et al., the defendants took the appeal to No. 68, filing specifications of error raising substantially the same questions raised by the specifications of error filed in the preceding appeal. Peter Robinson, also, took an appeal to No. 76, specifying that the court erred in holding that the appellant was not eligible to serve as a director of said association for the reason that he was not a citizen of the United States, and in so entering judgment.

*Mr. J. W. Wilson* (with him *Mr. Wm. Fackenthal* and *Mr. B. F. Fackenthal*), for J. J. Detwiller, C. L. Hemmingway and others, appellants:

1. A careful examination of the act of October 13, 1840, P. L. (1841) 5, (a virtual re-enactment of the act of April 6, 1791, 3 Sm. L. 20, and its supplement of April 8, 1833, P. L. 238), and the supplement of February 20, 1854, P. L. 90, under which acts the Farmers & Mechanics Institute of Northampton County was incorporated by the Court of Common Pleas, will show this court, in language which cannot be mistaken, that they limit the membership in any association created under their provisions to "citizens of this commonwealth." If authorities are needed to sustain this position, they will be found in every reported case where the question has been raised: Alsatian Benf. Ass'n, 35 Pa. 79; Butchers Benf. Ass'n, 35 Pa. 151; Philad. Artisans Inst., 8 Phila. 229; Journalists Fund

Charter, 8 Phila. 272; Mulholland Benev. Soc., 10 Phila. 19; Tara Benev. Soc., 9 Phila. 287.

2. The second section of article IV. of the constitution of the United States provides: " The citizens of each state shall be entitled to all privileges and immunities of the citizens of the several states." We take it that this provision does not mean, as the court below construed it, that a citizen of New Jersey is entitled in Pennsylvania to *all* the privileges and immunities in Pennsylvania which the laws of this state confer upon one of our own citizens. It either means that a citizen of New Jersey is entitled in Pennsylvania to all the privileges and immunities that a citizen of the United States is entitled to have and enjoy, or else that it means that a citizen of New Jersey is, by virtue of that citizenship, eligible to citizenship in Pennsylvania, and that when he acquires that citizenship he is entitled to all the privileges and immunities enjoyed by a citizen of this state: Gassies v. Ballon, 6 Pet. 762; Lemmon v. People, 20 N. Y. 608; Corfield v. Coryell, 4 Wash. C. C. 380. This constitutional provision applies to the privileges and immunities of citizenship, and not to the right of property: Sergeant's Const. Law, 385.

3. The privilege of voting was given by the charter of this corporation to the members as individuals, and a by-law giving each person as a stockholder a right to cast more than one vote for a director, is unauthorized and void: Commonwealth v. Gill, 3 Wh. 248; Commonwealth v. Conover, 10 Phila. 55. And the by-law giving the members of the association a right to vote by proxy, is also unauthorized: Brown v. Commonwealth, Brightly's Elec. Cases 282; Angell & Ames on Corporations, §§ 127, 131, 498; Brown v. Commonwealth, 3 Gr. 209; Phillips v. Nickam, 1 Paige 598; Taylor v. Griswold, 2 Green (N. J.) 223 (27 Am. Dec. 33); Commonwealth v. Bringhurst, 103 Pa. 134; Craig v. Presbyterian Church, 88 Pa. 47.

*Mr. Edward J. Fox, Jr.,* (with him *Mr. Edward J. Fox*), for the appellees, in Nos. 38, 68, and for the appellant in No. 76:

1. The question involved in this case is not whether non-residents can be original stockholders, but whether after a cor-

poration is organized citizens of another state may acquire the right to hold the stock by purchase, bequest or otherwise. We think that both upon principle and authority, there can be no question that non-residents may become stockholders. They are protected in this right by the constitution of the United States, which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states: Central R. Co. v. Penna. R. Co., 31 N. J. Eq. 285-6; Ward v. Maryland, 12 Wall. 418; Corfield v. Coryell, 4 Wash. C. C. 380-1; Humphreys v. Mooney, 5 Col. 282; Morawetz on Corp., § 361; Cooley's Const. Lim., 15.

2. There is nothing unreasonable in a by-law which gives to each member a vote for each share of stock held by him: Commonwealth v. Bringhurst, 103 Pa. 134; Morawetz on Corp., § 476; State v. Tudor, 5 Day 229 (5 Am. Dec. 162); nor in one which gives the members the right to vote by proxy: Cook on Stockholders, § 610; Morawetz on Corp., § 486; People v. Crossley, 69 Ill. 195; State v. Tudor, 5 Day 329. Moreover, there is nothing in the by-laws which gives to the directors the right to create a vacancy by ousting a director on the ground of ineligibility: Nute v. Hamilton Ins. Co., 6 Gray 174; Greer v. Haeussler, 78 Mo. 188; Green's Brice's Ultra Vires, 13; Commonwealth v. St. Patrick's Benev. Society, 2 Binn. 441; Sargent v. Franklin Ins. Co., 8 Pick. 90; Morawetz on Corp., §§ 122-3, 164; Germantown Pass. Ry. Co. v. Fitler, 60 Pa. 124; People v. Medical Society, 32 N. Y. 187.

3. It is clear that by the laws of Pennsylvania, act of February 23, 1791, 3 Sm. L. 4; act of February 10, 1807, 4 Sm. L. 362, aliens have the same right to hold personal property as natural born citizens have. It is the policy of the state to encourage the settlement of aliens within her borders, to develop her resources and add to her wealth. If aliens can hold property, it follows that they have a right to manage and control it. Associated capital is a necessity in these days to promote public enterprises which redound to the good of all the people of the state. It is mockery to say to an alien, you may associate with others in making public improvements, but you shall have no voice in directing or controlling your property in a corporation.

### NOS. 38, 68.

OPINION, MR. JUSTICE WILLIAMS:

The assignments of error in these cases are forty-four in number, but they have been properly treated by counsel on both sides as raising but seven questions. The first of these is stated in the words following: "Can a person not a citizen of Pennsylvania become a member of the Farmers & Mechanics Institute of Northampton County?" As applicable to these cases, the words "citizen of the United States" may properly be substituted for the word "person," in the question as stated by the appellants. Our question would then stand thus: "Can a citizen of the United States, who is not a citizen of Pennsylvania, become a member," etc.

Before proceeding to answer the question, we must also know what are the requisites to membership in this corporation, as laid down in the charter or by general law. Turning to article III. of the charter, we find the only provision which relates to this subject. This declares that "members shall severally subscribe at least one share of stock, amounting to twenty-five dollars;" and in the same connection it is added, "the aggregate subscriptions of which shall constitute the capital stock of the association." A member must therefore be a stockholder, and the capital stock is made up of the shares subscribed for by the members. There is no provision in the charter which contemplates the possibility of members who are not stockholders, or of stockholders who are not members. Throughout the charter the word "members" is uniformly used where stockholders are spoken of; the only exception being found in article VII. This article declares that the association may be dissolved "by two thirds in number and value of the members and stockholders," and then provides that in case of such dissolution the funds shall be "divided among the members in proportion to the amount of stock held by them." This is the only place where the word "stockholders" appears in the charter, and it is very clear that it is here used in the sense of "shares of stock." The meaning of the provision is, that, in order to dissolve the corporation, two thirds in number of the stockholders must agree to such action, and two thirds of the shares of stock must be represented by them. Two thirds in number of the stockholders cannot dissolve the association, nor can less than

two thirds in number, representing two thirds of the shares; but there must be an agreement of two thirds in number of persons, and two thirds in number of shares held, before dissolution can be lawfully ordered. We conclude, therefore, that a member of this corporation is necessarily a stockholder, and that a stockholder is, ipso facto, a member.

Returning, now, to our question, which concerns the rights of a holder of shares of stock, let us substitute the word "stockholder" for the word "member," and the final form of the question will be: "Can a citizen of the United States, who is not a citizen of Pennsylvania, become a stockholder in the Farmers & Mechanics Institute of Northampton County?"

We answer, first, there is nothing in the charter that forbids it. It is true that the preamble or declaration with which the charter begins, sets out the fact that the persons by whom the application is signed are citizens of the commonwealth of Pennsylvania; but it contains no engagement that they shall remain so, or that upon removal into another state their stock shall escheat to the commonwealth, or be forfeited to the association. The charter invests the association with the powers of a corporation, including the power to issue stock, but it lays no restrictions upon the stockholders. Nor, in the second place, is there anything in the general law as it stood when this charter was granted, or as it stands now, that forbids it. The act of April 6, 1791, authorized the governor, and that of October 13, 1840, authorized the courts, to incorporate associations for literary and other purposes, "when any number of persons, citizens of this commonwealth, are associated, or mean to associate," for such purposes. The power of the courts was further enlarged by the act of February 20, 1854, so as to embrace associations for the promotion of agriculture. The charter of this association was granted by the courts of Northampton county on April 25, 1856, under the authority conferred by the acts of 1840 and 1854. It may be conceded that a petition for incorporation, purporting to be signed by citizens of New Jersey, or of any other state except Pennsylvania, would have been refused by the court. The advantages of corporate powers provided for by the general laws, as they then stood, were reserved, in the first instance, for citizens of the state; but, when granted to citizens, no restrictions were put upon their exer-

cise that affected the negotiable character of their stock, or the rights or powers of stockholders. The corporation, once created, was clothed with the power to issue stock. In the absence of any express provision to the contrary, the stock so issued was, like the stock of other business corporations, and like all varieties of personal property, freely alienable by the owner by gift or sale, by bequest or intestacy. Nothing less than an explicit provision in the charter or in the general law could deprive the shares of their character as personal goods, or the owner of his power to dispose of his own property. As we have seen, no such restriction is to be found in either.

If we now turn to the general law, as it stands at present, we shall find that non-residents may become corporators. Section 3 of the act of April 29, 1874, P. L. 75, declares that "the charter of an intended corporation must be subscribed by five or more persons, three of whom, at least, must be citizens of the commonwealth." Two, therefore, of the original corporators may be persons who are neither citizens of Pennsylvania, nor residents within its jurisdiction. In section 7 of the same act it is made the duty of the directors to procure certificates of stock, and deliver them, duly signed and sealed, to each person entitled to receive them, according to the number of shares held by such person. The section then proceeds as follows: "Which certificates or evidences of stock shall be transferable at the pleasure of the holder; . . . . . and the assignee or party to whom the same shall have been so transferred shall be a member of said corporation, and have and enjoy all the immunities, privileges, and franchises, and be subject to all the liabilities, conditions, and penalties, incident thereto, in the same manner as the original subscriber or holder would have been." This was a mere declaration of the law as it then stood, and not the introduction of a new rule. But the act of April 17, 1878, P. L. 22, is a legislative step in advance. It authorizes any corporation, authorized to hold exhibitions of natural and artificial articles and products, to mortgage its real and personal property and franchises, and provides that the purchaser or purchasers at public sale under such mortgage "shall be, and they are hereby, constituted a body politic, with all the rights, immunities, and privileges of the corporation whose property and franchises may be thus sold."

From this glance at the general law as it now stands, it is very clear that the restriction upon the rights of stockholders in this association, contended for by the appellants, and which we have found wanting in the charter and the general law as it stood when the charter was granted, has not been supplied by the statutes now in force. Our first question may, then, be answered in the affirmative. A citizen of the United States may become a stockholder in the Farmers & Mechanics Institute of Northampton County, although he is not a citizen of, or resident in, this state. For the same reasons the second and third questions must be answered in the affirmative. The non-resident stockholder takes his shares with all the rights and privileges which pertain to them in the hands of a citizen, and he may vote upon them, and, where no other qualification than ownership of stock is required of the directors, he may become a director. We put the right of the stockholder, not so much on the provision of the constitution of the United States, which was discussed with so much learning by the judge of the court below, as upon the nature of the stock as a personal chattel, and the right of an alien friend at the common law to deal in personal goods, embark in trade, loan money, sue and be sued for the collection of debts, and the protection of his person and personal estate.

The fourth and fifth questions relate to the right of a stockholder to cast more than one vote, if he owns more than one share of stock, and his right to vote by proxy. A corporation is a voluntary association of persons engaged in a common enterprise. When the methods of voting are not fixed by general law, the corporators may make the law for themselves, subject to the qualification that such laws and regulations as they make shall not conflict with the laws of the state or of the United States. The general law did not touch either of the questions now raised, and for that reason the corporators or stockholders took them up, and made a law for themselves, covering both subjects. They have provided that stockholders shall have one vote for each share held by them up to ten shares, and they have fixed the proportion which his votes shall bear to his shares above that number. This is a reasonable regulation; it is uniform in its operation; it conflicts with no law, and it is binding on all the shareholders. The same thing may be said in regard

to voting by proxy. It was competent for the members of this association to consider what was most convenient for themselves, and best calculated to secure the votes of all the shareholders at the annual elections. They had the power to refuse to receive votes unless offered by the voters in person, but, upon consideration, they decided that votes might be cast by proxy. This also was a reasonable regulation, uniform in its application, works no wrong to any shareholder, and conflicts with no law of the commonwealth. It is therefore a valid and binding law, made by the shareholders for their own government.

The sixth and seventh questions may be considered together, as they relate to the power of the directors to fill vacancies. Article I., § 7, of the by-laws is as follows: " When any director shall die, resign, neglect to serve, or remove out of the county, the board may proceed to supply the vacancy," etc. How is the power thus conferred to be exercised? The death of a member of the board of directors would ordinarily be a matter of sufficient notoriety to justify the prompt filling of the vacancy. A resignation made to the board affords evidence of a vacancy, upon which action may be taken at any time. Removal for neglect to serve is in the nature of a penalty, and cannot be imposed without inquiry into the fact. The alleged delinquent, if within convenient reach, should have notice that he is charged with neglecting to perform his official duties, and be heard, if he so desires, in his own defence. The only other ground on which a vacancy may be declared, is the removal by one who was a resident of the county when elected a director, to another county or state. Such a removal ordinarily operates to transfer the business and social interests of the person from his old to his new home. Old forms of activity and old business relationships are discontinued, and new ones, in a new neighborhood, take their places. But a removal out of the county does not necessarily produce these results in all cases. It may not be intended to be permanent. It may not interfere with the ability or inclination to discharge acceptably all the duties of a director. The question in each case is whether a vacancy exists in fact. If it does, when the fact is ascertained the vacancy may be filled. The subject of the section is the filling of actual vacancies happening intermediate the annual elections. The board cannot create a vacancy. They cannot

oust a director because they differ from the stockholders as to his eligibility, nor because he fails to attend a called meeting, nor because he is not a citizen of the commonwealth. Legal questions must be settled in the courts. Questions of fact, such as the existence of an actual vacancy by removal after election or neglect of duty by a member of the board, may be settled by the directors, and the resulting vacancies, if any, may be filled by them; but this is the extent of their power in the premises.

The judgment is affirmed.

NO. 76.

OPINION, MR. JUSTICE WILLIAMS:

In the case of Commonwealth v. Detwiller, in which an opinion has been filed at the present term, ante, p. 631, we have considered the question: " Can a citizen of the United States, who is not a citizen of Pennsylvania, become a stockholder in the Farmers & Mechanics Institute of Northampton County?" We are now to push our inquiries one step further, and determine whether one who is not a citizen of the United States, but is, and for many years has been, a resident and property holder in Pennsylvania and in Northampton county, can become a stockholder in the same association; and whether, if he may become a stockholder, he is entitled to vote as such at the stockholders' meetings; and, finally, whether he may be legally elected a director of the association.

For the reasons given in Detwiller v. Commonwealth, supra, we think he may become a stockholder. The stock being personal property, he may acquire it by gift or purchase. An alien could at common law buy personal goods, and sell them, and, except in the case of an alien enemy, there was no restriction upon trade with aliens. If he can acquire the stock, he can acquire with it all the rights and privileges which its ownership confers, among which is the right to have a voice in the control of the enterprise, and the selection of those who are to conduct its affairs. He may therefore vote in the same manner, and with the same effect, as any other stockholder may do. Why may he not become a director? The office is not a political one. If it was, he would, of course, be ineligible to it, and disqualified for voting for any one else to fill

it, because of his want of citizenship. But the charter makes but one qualification, and that is found in the fifth article: " The members of this association shall elect fifteen of their number to be a board of directors, who shall, within ten days after their election, divide themselves into three classes of five each, . . . . and annually thereafter five new directors shall be elected to serve for three years." A director must be a stockholder. No other qualification is required. We are not to inquire how many shares he holds, whether he was an original corporator, or in what manner he acquired title to his stock. The single question which the charter raises is whether he is a stockholder.

The learned judge who tried this case in the court below thought that the right of the citizens of New Jersey to become stockholders, to vote, and to hold office in this association, rested on the constitution of the United States, and, logically enough, held that one who was not a citizen of the United States could not become a director; but we think the right of all persons, not alien enemies, to buy and hold, use and enjoy, personal property, whether corporate stocks or articles of merchandise, is older than the constitution, and that citizenship of the United States is not necessary to its exercise. Even as to real estate, the distinction between a resident alien friend and a citizen, has disappeared in Pennsylvania and nearly every other state in the Union. The words of our act of 1807 are: " It shall and may be lawful for any alien or aliens, actually resident within this commonwealth, and not being the subject or subjects of some sovereign state or power which is, or shall be at the time or times of such purchase or purchases, at war with the United States of America, to purchase lands, tenements, and hereditaments within this commonwealth, and to have and to hold the same in fee-simple, or for any lesser estate, as fully, to all intents and purposes, as any natural born citizen or citizens may or can do." The conditions annexed to this section were modified by subsequent legislation, so that now the only limitations are that the purchase shall not exceed 5,000 acres in extent, or $20,000 in annual value. An examination shows that in thirty-eight states resident alien friends are put upon the same footing with natural born citizens as to the right to acquire, use, and dispose of real estate. In one or two others

an exception is made excluding the Chinese from the privileges conferred on other resident aliens, and in two more no provision is found upon the subject.

In Pennsylvania, therefore, a resident alien friend can deal as freely in all forms of property, whether personal or real, "to all intents and purposes as any natural born citizen or citizens may or can do." He may embark in business, become a stockholder in a joint-stock association or corporation, become a manager or director, when not expressly made ineligible, and use, enjoy, control, and direct his property, of whatever nature or kind, in the same manner as any natural born citizen may do. The judgment of the court must therefore be reversed as to the appellant, and he be restored to the position to which he was regularly elected by his fellow-stockholders; the costs of the appeal to be paid by the appellees.

Judgment reversed.