W. A. McKee, *et al.,* v. Home Savings & Trust Company, E. C. Spinney and W. H. Bremner, Appellants, J. J. Bellville, *et al.,* Interveners.

**Building and Loan Association:** LIQUIDATION: VOTING PROXIES.
1    The word "election" in Code, section 1900, includes the action of stockholders in voting upon a proposition of voluntary liquidation, but where the same is carried by the aid of votes cast by one person under proxies, in excess of ten per cent of the outstanding shares, as provided by said section, the proposition is not legally adopted.

**Same.** A general proxy authorizes the holder to vote the same on
2    all matters that may properly come before a stockholders' meeting at that time, but will not confer the power to vote the shares upon the question of liquidation of the corporation under a statute enacted subsequently to the time it was given.

*Appeal from Polk District Court.*—Hon. A. H. McVey, Judge.

FRIDAY, FEBRUARY 12, 1904.

APPEAL by the defendant, the Home Savings & Trust Company, from an interlocutory decree appointing a receiver in a proceeding in which plaintiff and others, stockholders of the defendant company, ask that the company be adjudged insolvent and dissolved, and its assets and the proceeds

thereof, after payment of its debts, be distributed, and ask for an accounting as against E. C. Spinney, the secretary of the company, and W. H. Bremner, claiming to act as trustee under a vote of the stockholders and directors of the company.—*Affirmed.*

*Dowell & Parish, I. M. Earle,* and *Dudley & Coffin* for appellant.

*Baily & Stipp, Read & Read, Myerly & Myerly, C. L. Powell, Louis Block, et al.* for appellees.

McClain, J.—The material facts, in the view which we take of the case, are that the principal defendant, a savings and loan association, attempted to proceed, under the provisions of 28th General Assembly, page 51, chapter 69, section 7 (Supp. Code, section 1907a), to go into voluntary liquidation, and that on the 24th day of September, 1901, at a meeting of the stockholders, a plan was adopted, as is claimed by the defendants, by which a trustee was to be appointed by the Auditor of State , with the approval of the executive council of the state, to wind up the affairs of the company. In accordance with this action, W. H. Bremner was appointed trustee, and he has been acting, to the exclusion of the officers and board of directors of the company, in the conduct of its business, with a view of closing up its affairs. Counsel for appellant contend that, as the company was thus being wound up in acordance with statutory provisions, there is no occasion for the interposition of a court of equity by way of appointment of a receiver, while the position of appellees is that Bremner was not legally appointed, and that the financial condition of the company is such as to make the appointment of receiver a proper relief to be afforded by a court of equity. The only question which we have occasion to consider is the validity of the proceedings in pursuance of which Bremner was appointed, for it is practically conceded that the company should be wound up, and that, if it has not availed itself of the statutory remedy, a court of equity may properly intervene. At the stockholders' meeting at which the plan

of voluntary liquidation was adopted, in pursuance of which Bremner was appointed trustee, fifteen stockholders of the company, out of one thousand two hundred and one, were personally present, owning about two hundred eighty shares out of a total of seven thousand five hundred and eighty shares outstanding. Shares to the number of three hundred thirty-seven owned by thirty-five stockholders, were not represented, and one thousand one hundred and fifty-one stockholders owning six thousand nine hundred and seventy shares, were represented by proxies; E. C. Spinney, the secretary, representing one hundred and fifty-seven shares as owner, and five thousand shares, owned by eight hundred and eighty-two stockholders, under proxies. Spinney voted all the shares owned and represented by him in favor of the proposition to adopt the plan of voluntary liquidation, and, without the votes cast by him under proxies, the proposition would not have been adopted by a vote of three-fourths of the shareholders, as required by the statute above referred to. Two objections are made to counting the votes cast by Spinney under his proxies in favor of the proposition: First, that by Code, section 1900, no person shall vote more than ten per cent. of the outstanding shares; and, second, that, of the five thousand shares owned by eight hundred eighty-two stockholders, which Spinney voted under proxies, he was authorized, by the proxies held, only to vote two thousand eight hundred and seventy-two shares, owned by four hundred eighteen stockholders, on this proposition.

The language of Code, section 1900, above referred to, so far as material to this question, is as follows: "Each member shall have one vote for each one hundred dollars of

1. LIQUIDATION: stock par value owned and held by him at any
voting proxies. election, and may vote the same by proxy, but no person shall vote more than ten per cent. of the outstanding shares at the time of said election." If this provision is applicable to the action of the stockholders in adopting the proposition for voluntary liquidation, then Spinney was auth-

orized to vote only seven hundred fifty-eight shares, and the proposition was not supported by the requisite number of votes. Counsel for appellant contend that the statutory language is applicable only to elections of officers of the corporation, and not to votes of stockholders with reference to the adoption or rejection of such a proposition as was here submitted to them. The primary meaning of "election" is "a deliberate act of choice; particularly a choice of means for accomplishing a given end." See Century Dictionary. The word is further used as meaning the choice of a person or persons for office, and the act or process of choosing a person or persons for office. But by extension it means also "a public vote upon a proposition submitted; a poll for the decision by vote of any public matter or question; as to hold an election on a new Constitution, or on a measure referred by the Legislature to the people." See Century Dictionary, "Election" (4). That the word "election" is now generally used as indicating the expression of choice by vote, regardless of whether the choice to be made is as to the selection of an officer or the adoption of a proposition, seems to be too clear for reasonable controversy. In the following cases the word is used as indicating an expression of choice although without any special discussion of the question as to its meaning: *Chicago & R. I. R. Co. v. Mallory,* 101 Ill. 583; *County Seat of Linn County,* 15 Kan. 500, 526; *State ex rel. v. Tucker,* 54 Ala. 205, 210; *Commonwealth v. Desmond,* 122 Mass. 12; *State ex rel. v. Ewing,* 17 Mo. 515. A pertinent case is that of *Walker v. Johnson,* 17 App. D. C. 144, in which it is held, at page 160, under a provision of a corporate charter that, in adopting an amendment, two-thirds of the votes shall decide, the voting should be in accordance with the provision of another section, dealing with the election of managers; and the court uses this language: "The adoption and amendment of by-laws that determine the conduct of all the affairs of the corporation would seem as important to the interests of members in general as the election of managers from year to year, and it is reasonable to presume that the

method of voting prescribed in one case was intended to furnish the rule of the other. SConsidering the nature of the corporation, this presumption of intention becomes so strong that it ought not to be rebutted, save by some expression to the contrary, which we do not find anywhere in the act of incorporation." We reach the conclusion, therefore, that the word "election," used in Code, section 1900, refers to the action of the stockholders in adopting a proposition submitted to them, and is not to be limited to the election of officers, and therefore that the proposition for voluntary liquidation and the appointment of a trustee was not adopted by the requisite affirmative vote.

Our conclusion on the second question above suggested leads to the same result. The proxies held by Spinney were of two classes—those executed with reference to action at this special meeting, under which Spinney was authorized to act for four hundred eighteen stockholders, owning two thousand eight hundred and seventy-two shares, and those executed by stockholders at the time they subscribed for stock in the association, under which Spinney claimed to represent four hundred sixty-four stockholders, owning two thousand one hundred and thirty-two shares. The proxies of the latter class were in the following form: "In order to obtain representation, I hereby appoint ——to vote in my place and stead as proxy, and authorize him, during my absence, to vote in all matters which may come before any meeting of the stockholders. I reserve the right to revoke this appointment at any time." The objection made to proxies of this class is that they refer only to ordinary business which should come before stockholders' meetings in relation to the affairs of the corporation, and not to action on an extraordinary proposition, such as that of terminating the business of the corporation on account of insolvency. The statute under which the stockholders attempted to act was passed long after these proxies were executed, and it could not have been in the contemplation of the persons signing

. SAME.

them that the stockholders would vote on the question whether the corporation should be wound up by a trustee, for at the time they were executed there was no authority to adopt such a proposition, or resort to such a method of winding up the corporate affairs.   It is well settled that a stockholder can vote by proxy only when authorized by statute, or by the articles or by-laws of the corporation.   *Commonwealth v. Bringhurst,* 103 Pa. 134 (49 Am. Rep. 119); *Commonwealth v. Detwiller,* 131 Pa. 614, 623 (18 Atl. Rep. 990, 992, 7 L. R. A. 357, 360); *Market Street R. Co. v. Hellman,* 109 Cal. 571, 597, (42 Pac. Rep. 225); *People v. Crossley,* 69 Ill. 195; 1 Thompson, Corporations, section 736 *et seq.*; 2 Cook, Corporations, (4th Ed.) section 610.   So far as we have discovered, there are no general statutory provisions in this state for voting by proxy at corporate elections; and Code, section 1900, with reference to building and loan associations, as already indicated, authorizes a vote by proxy, with the limitations indicated.   Therefore, if Spinney had any authority whatever ta act under proxies, it must have been by virtue of some article or by-law of the defendant corporation.   No such article or by-law is set out in the record, but, as counsel on both sides present the case on the theory that voting by proxy was authorized, we assume that there was such provision.   Now, it is evident that the proxy given at the time of the subscription of stock could have contemplated action for the stockholder only with reference to matters which could be submitted to the stockholders under such articles and by-laws, and there was at the time these proxies were given no authority to act upon any such proposition as that considered by the stockholders at the meeting in question.   With reference to the power to vote under a stockholder's proxy, the following language is used in 2 Cook on Corporations (4th Ed.), section 610:   "The ordinary proxy, being intended to be for an election, merely, does not enable the proxy to vote to dissolve the corporation, or to sell the entire corporate business and property, or to vote upon other important business, unless such proxy itself,

in general or special terms, gives the proxy the power to vote on such questions." And this text is supported by pertinent authorities which are cited. See, also, as applicable to this question, *Smith v. Smith,* 3 Desaus. (S. C.) 557; 23 Am. & Eng. Enc. of Law, 298. Spinney was therefore not authorized under these general proxies to vote on the proposition submitted, and, without the votes cast by him for stockholders represented by these general proxies, the proposition was not adopted by a three-fourths vote of the stockholders.

It is suggested by counsel for appellants that the stockholders for whom Spinney held general proxies had been urged by him to send special proxies for this meeting and notified that, if they did not respond, he would assume that they authorized him to represent them under the general proxies, and that therefore we ought to presume that by silence they gave consent. This proposition is wholly untenable. If a special authority was necessary, and was not given, then Spinney did not have it. We may reasonably presume that the special proxies were not given because the stockholders to whom application was made did not desire to be represented at that meeting.

The proposition to go into voluntary liquidation under the statutory provision not having been legally adopted by the stockholders, the lower court was justified in making the order for the appointment of a receiver, and its action in making such order is AFFIRMED.