## APPEALS OF TUNNEL RAILROAD OF ST. LOUIS AND ST. LOUIS BRIDGE CO.

### Docket Nos. 2713, 2714. Decided July 30, 1926.

1. Control by one corporation, through a long-term lease, of the property and business of another corporation does not constitute control of the stock of such other corporation.

2. Authorization to vote stock by proxy does not effect a separation of the voting power from the ownership of the stock; neither does it constitute a relinquishment by the stockholder of any right of ownership or control of his stock.

3. A corporation, as assignee of a long-term lease, controlled the entire properties of two other corporations; it owned only a part—not amounting to substantially all—of the voting stock of one of the lessors, and the remainder of the voting stock of the lessors was owned by strangers and voted by officers of the assignee through proxies. *Held*, that the lessor corporations were not entitled to affiliation with the assignee.

*T. M. Pierce, Esq.*, for the petitioners.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

These petitioners appeal from the determination by the Commissioner of deficiencies of $2,051.20 and $1,694.88, respectively, in income taxes for the years 1917, 1918, and 1919, which deficiencies are entirely the result of the Commissioner's holding that the petitioners were not, during the years in question, affiliated with the Terminal Railroad Association of St. Louis, under section 240 of the Revenue Act of 1918 and section 1331 of the Revenue Act of 1921.

### FINDINGS OF FACT.

The St. Louis Bridge Co., hereinafter called the Bridge Company, and the Tunnel Railroad of St. Louis, hereinafter called the Tunnel Company, are Missouri corporations, both incorporated on December 18, 1878, for a period of 500 years. The Bridge Company and the Tunnel Company were organized for the purpose of owning and operating the Eads Bridge across the Mississippi River at St. Louis and the tunnel approach thereto in St. Louis.

These companies, the petitioners, by an agreement dated July 1, 1881, leased all their properties to the Wabash, St. Louis & Pacific Railway Co. and the Missouri Pacific Railway Co. for the entire term of corporate existence of the petitioners and any renewals or extensions thereof.

The lessees agreed to pay as the rental of these properties all taxes and assessments on the property, the sum of $2,500 per year to cover corporate expenses of the petitioners, and to the holders of bonds the principal and interest thereon and to stockholders the dividends on the stock. These securities and the interest and dividends to be paid were as follows:

*St. Louis Bridge Co.:*

|  |  |  |  |
|---|---|---|---|
| $5,000,000 mortgage bonds—7 per cent interest rate__ | $350,000 | per annum |  |
| 2,490,000 first preferred stock—6 per cent dividend rate_____ | 149,400 | " | " |
| 3,000,000 second preferred stock—3 per cent dividend rate_____ | 90,000 | " | " |

*Tunnel Railroad of St. Louis:*

|  |  |  |  |
|---|---|---|---|
| $1,250,000 common stock—6 per cent dividend rate___ | 75,000 | " | " |

All of the dividends on the above stock were to be guaranteed by the lessees by endorsement on the stock certificates. The right of reentry was given the petitioners in case of default by the lessees, provided the default continued for 60 days. The common stock of the Bridge Company in the amount of $2,500,000 was to be placed by that company with a trustee, (quoting from the lease)—

* * * to be held by it in trust, with power and authority so long as the said lessee companies shall perform their obligations under this lease, to vote in person or by proxy upon said stock at any and all meetings, special or stated, of the stockholders of said St. Louis Bridge Company, and upon any proposition submitted at such meeting, as shall be directed by the said lessee companies, not inconsistent with the preservation of this lease.

The said common stock, subject to the above restriction as to the custody and control thereof, shall go and belong to the said lessee companies.

The terms of this lease were carried out by the parties thereto.

In 1889 the lease was assigned to the Terminal Railroad Association of St. Louis, hereinafter called the Terminal Association, a Missouri corporation composed of fourteen members or proprietary railroad companies whose lines operated in St. Louis. The Terminal Association operates the terminal and transfer facilities as a unit. The properties leased from the petitioners are an integral part of such terminal facilities and could not practically be operated separately. Under the assignment the Terminal Association agreed to perform the covenants and make the payments provided for in the lease.

The officers of the Terminal Association, namely, the president, the vice president, the secretary-treasurer and the auditor, hold the same respective positions in the petitioner companies, to which they

are elected annually by officers of the Terminal Association under proxies given them by holders of the stock of the petitioners.

Since the execution of the lease, the petitioners have done no business. They draw no checks and declare no dividends. They pay no capital-stock tax. In the annual reports to the Interstate Commerce Commission the Terminal Association has always included the Bridge and Tunnel Companies as part of its own report. The Terminal Association treats its obligations under the lease as its own operating expenses, and on its tax returns it deducts the interest paid on the Bridge Company's bonds.

For more than twenty years unrestricted proxies covering all the voting stock have been given to the president and vice president of the Terminal Association. These officials of the Terminal Association have voted all the stock of both corporations. No proxy has ever been refused or withheld from the Terminal Association. The only activity of either taxpayer corporation has been the annual election of officers. At such elections the officials of the Terminal Association have elected themselves as officers of the corporation.

OPINION.

ARUNDELL: The facts may be briefly summarized. The Terminal Association leases and operates all the properties of the petitioners. As rent for these properties it pays to the petitioners a nominal sum to cover cost of maintaining their corporate existence, agrees to discharge the bonded indebtedness of the petitioners by payment of principal and interest direct to the bondholders, and agrees to pay direct to stockholders of the petitioners the dividends on their stock. The Terminal Association owns and votes all of the common stock of the Bridge Company in the amount of $2,500,000. The remainder of the capital stock of the Bridge Company, being first preferred in the amount of $2,490,000 and second preferred in the amount of $3,000,000, and the capital stock of the Tunnel Company, which is common stock in the amount of $1,250,000, is owned by persons other than the Terminal Association but is voted by officers of the Terminal Association under proxies given to it annually by the stockholders.

Under these facts, are the petitioners entitled to affiliation with the Terminal Association?

The petitioners say that the lease under which their properties are operated is tantamount to vesting title to the properties in the Terminal Association in fee. This contention seems immaterial for affiliation, under the statutes, is not based on ownership of corporate property—it must be based, if it exists, on ownership or control of stock.

As to the property being leased under an agreement which may amount to a lease in perpetuity, we have held in the *Appeal of Old Colony R. R. Co.*, 1 B. T. A. 1067, and *Appeal of Norwich & Worcester R. R. Co.*, 2 B. T. A. 215, that the fact that one corporation operates the property of another by virtue of a long-term lease is not sufficient basis for affiliation, as we could not so far disregard the language of the statute as to hold that control of the property and business of the corporation is control of the stock.

The petitioners make no claim that affiliation rests on stock ownership. This is easily understood from the fact that the Terminal Association owned none of the Tunnel Company stock and owned only 25,000 of a total of 79,900 shares of the Bridge Company stock.

Thus by elimination we come to the proposition that, if affiliation exists, it must be by reason of stock control through proxies, which over a period of twenty years have been given to officers of the Terminal Association by holders of all the preferred stock of the Bridge Company and all the common stock of the Tunnel Company, both classes of stock having voting rights. The proxies given in these cases were in the usual form of unrestricted proxies. The rights and duties generally of holders of proxies at stockholders' meetings are too well known to require discussion here. Our concern is whether the proxies vested a sufficient control in the donees to bring the companies here involved within the affiliation statutes.

The giving of proxy is not a relinquishment by the donor of any of the rights of ownership or control. It is merely a delegation of one of the incidents of ownership—the right to vote the stock—and this delegation at the most makes the proxy holder an agent of the donor. And this agent must vote in accordance with the instructions given either openly or tacitly to him by the owner of the shares. *Buche* v. *Central Leather Co.*, 78 N. J. Eq. 484; 81 Atl. 571. Nor can the giving of a proxy be regarded in fact as a separation of the voting power from the ownership of stock, since the property right remains in the stockholder. In *Warren* v. *Pim*, 66 N. J. Eq. 353; 59 Atl. 773, 784, it is said:

A proxy confers only a power upon the stockholder's deputy and not a right. The right still inheres in the stockholder.

Furthermore, the agency thus created is limited. A proxy to vote stock in the ordinary concerns of the corporation—and proxies are to be so construed unless their terms are special—is no authority to vote for the reorganization of the corporation, *Farish* v. *Cieneguita Copper Co.*, 12 Ariz. 235; 100 Pac. 781; or its consolidation with another corporation, or for the sale of all of its property, *Abbot* v. *American Hard Rubber Co.*, 33 Barb. (N. Y.) 578; or for a voluntary liquidation of its affairs. *McKee* v. *Home Savings & Trust Co.*, 122 Iowa, 731; 98 N. W. 609.

The petitioners cite the case of *Hyams* v. *Calumet & Hecla Mining Co.*, 221 Fed. 529, where it is said, at page 541:

A control purposely gained and exercised by a minority stockholder with the aid of proxies of other stockholders may have the same effect as a control by actual stock majority. See *United States* v. *Union Pacific R. R. Co.*, 226 U. S. 61, 33 Sup. Ct. 53, 57 L. Ed. 124.

This holding of the court is not open to dispute, for the principle set out therein is well known. It is simply that the holder of the voting rights of a majority of stock may control the corporation as fully as the owners of a majority. An even stronger case on this point is found in *United States* v. *Union Pacific R. R. Co.*, 226 U. S. 61, where the Union Pacific owned 46 per cent of the stock of a competing railroad, but this 46 per cent ownership was by a compact, united body, while the remainder was distributed among many stockholders. Here the court reached " the conclusion that the Union Pacific thus obtained control of a competing railroad system." Neither of these cases are in point here, for they deal with corporate control by minority stockholders. The statute with which we have to deal requires ownership or control of *substantially all the stock* of another corporation. Plainly, to meet the terms of the statute it is not sufficient to show control of a corporation by minority stockholders; what must be shown is ownership or control of *substantially all the stock*. We have pointed out above that acquisition of voting power by proxy does not carry with it control of the stock.

We are accordingly of the opinion that the petitioners are not entitled to be considered as affiliated companies with the Terminal Railroad Association of St. Louis.

> *The deficiency for the years 1917, 1918 and 1919 in the case of the Tunnel Railroad of St. Louis is $2,051.20, and in the case of the St. Louis Bridge Co. is $1,694.88. Order of redetermination will be entered accordingly.*

LOVE and STERNHAGEN dissent.