[Civil No. 1058.   Filed March 20, 1909.]

[100 Pac. 781.]

T. E. FARISH, J. F. WILSON, F. S. WILLIAMS, and
THOMAS FARISH, JR., Plaintiff and Interveners, Ap-
pellants, v. CIENEGUITA COPPER COMPANY, a
Corporation, Organized Under the Laws of the Terri-
tory of Arizona; THE CIENEGUITA COPPER COM-
PANY, a Corporation, Organized Under the Laws of the
State of Nevada; GEORGE BEBEE, C. W. WILHELM
and J. C. CAMPBELL, Defendants and Appellees.

1. CORPORATIONS — REORGANIZATION — POWER TO REORGANIZE.—While
stockholders have power to reorganize the corporation, an agreement
for the reorganization of a solvent going corporation is invalid,
unless it is based on the unanimous consent of the stockholders.

2. SAME—SAME—EFFECT OF PARTICIPATION—REORGANIZATION PROCEED-
INGS.—A stockholder who participates in reorganization proceedings
and votes in person for the reorganization, and presents his stock
for exchange in the reorganized company, is bound by his action,
and cannot thereafter question the validity of the proceedings.

3. SAME—SAME—ACTION AGAINST REORGANIZED CORPORATION.—Where
a reorganized corporation refuses to exchange stock in the old cor-
poration for stock in the reorganized corporation, in accordance with
the reorganization agreement, the stockholder has a right of action
to compel the performance of the conditions on which the cor-
poration was reorganized.

4. SAME — STOCKHOLDERS — MEETINGS—PROXIES—ESTOPPEL OF STOCK-
HOLDERS.—A stockholder who was represented at a stockholders'
meeting by an authorized proxy is estopped to contend that his
proxy, or the proxies of other stockholders, should not have been
recognized.

5. SAME—MEETINGS—AUTHORITY OF PROXIES.—The proxy of a stock-
holder, appointed to vote at the annual meeting on the stock stand-
ing in the stockholder's name, and granting his proxy "all the
power that he would possess if personally present at such meet-
ing," does not authorize the proxy to vote for the reorganization
of the corporation, as such business is not within the normal scope
of the business of the stockholders' meeting.

6. SAME—REORGANIZATION—ACTION AGAINST ORIGINAL CORPORATION—
LACHES.—A stockholder is not estopped by laches to complain of
a reorganization of the corporation at a meeting, where he was not
notified that a proposition to reorganize would be presented at the
meeting, and did not know that it had been attempted until imme-

diately prior to the institution of a suit to annul the reorganization, brought by another stockholder "on behalf of himself and other stockholders similarly situated," although several months elapsed between the institution of the suit and the intervention of the stockholder in the suit.

7. SAME—SAME—PROCEEDINGS—"DISSOLUTION."—Civil Code of 1901, paragraph 772, providing that a corporation may be dissolved by a majority vote of its members, and Laws 1903, No. 82, providing for the dissolution of a corporation by direction of the holders of the majority of its outstanding stock represented at the meeting, does not authorize the reorganization of a corporation into another corporation by a majority vote of its members, as the "dissolution" of the corporation means its complete destruction and the liquidation and distribution of its assets, and Act 82 does not authorize the majority of the stockholders to give away the corporate assets, or to place upon nonassenting stockholders the necessity of being parties to a continuation of the business under a new corporate franchise.

8. SAME—SAME—ACTION AGAINST ORIGINAL CORPORATION—DEFECT OF PARTIES.—A stockholder of a corporation, which has been reorganized without his consent into a foreign corporation, can bring an action against the home corporation to set aside the reorganization, without making the foreign corporation a party to the litigation, but the only relief he can obtain is a judgment declaring the action of the home corporation null and void.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge. Reversed and judgment entered.

The facts are stated in the opinion.

J. F. Wilson, and Walter Bennett, for Appellants.

While fraud is a question of fact that must be proven by the party charging it, the evidence submitted on the trial of the case was amply sufficient to sustain the charge. If promises under which plaintiff was induced to vote for resolution exchanging stock were made fraudulently, plaintiff should be relieved from the consequences of his acts, and should be relieved from complying with his part of the transaction when he discovers the fraud and when the other party to the transaction refuses to carry out its part of the agreement as understood by the plaintiff. *Oakley* v. *Morton,* 11 N. Y. 25, 62 Am. Dec. 49; *Construction Co.* v. *Seymore,* 91 U. S. 647, 23 L. Ed. 342.

One imposed upon by actions of fraud may be relieved from its consequences in courts of equity.

A general proxy must be construed to mean that it gives the power only to vote the proxy in the general and ordinary concerns of the corporation, and cannot be used for voting for extraordinary purposes. 2 Cook on Corporations, sec. 610; 3 Marshall & Clark, or Clark & Marshall, on Private Corporations, p. 2014; 1 Thompson on Corporations, 738; *Smith* v. *Smith,* 3 Desaus. (S. C.) 557; *Abbott* v. *Hard Rubber Co.,* 33 Barb. (N. Y.) 578; *Moore* v. *Ensley,* 112 Ala. 228, 20 South. 744.

The plaintiffs were not estopped from complaining where they had voted at a meeting under a mistaken understanding of facts, where the acts in themselves were *ultra vires.*

Notice of making fundamental changes in the business and course of the corporation must be given stockholders, and such notice given at a meeting of stockholders where general proxies had been voted did not bind the stockholders giving such proxies. *Copeland* v. *Gas Light Co.,* 61 Barb. (N. Y.) 60; *Abbott* v. *Hard Rubber Co.,* 33 Barb. (N. Y.) 580; *People* v. *Ballard,* 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737; *Taylor* v. *Earl,* 8 Hun (N. Y.), 1; *People* v. *Chicago Trust Co.,* 130 Ill. 268, 17 Am. St. Rep. 319, 22 N. E. 798, 8 L. R. A. 497; *Forrester* v. *Consolidated Co.,* 21 Mont. 544, 55 Pac. 230, 353. Where one stockholder or party in general interest in the subject matter of the suit institutes proceedings to set aside an *ultra vires* or unlawful act, other stockholders having a general interest in the subject matter of the suit would not be guilty of laches because they did not join in the suit, or institute proceedings on the same line. 12 Cyc., p. 558; *Met. El. R. R. Co.* v. *Manhattan etc. Ry. Co.,* 14 Abb. N. C. (N. Y.) 103, 11 Daly (N. Y.), 373; 15 Am. & Eng. R. R. Cas., p. 1; *Broadman* v. *Lake Shore etc. Ry. Co.,* 84 N. Y. 157.

Eugene S. Ives, for Appellees.

The stock of the Arizona corporation having been transferred to the Nevada corporation, and this corporation not having been made a party defendant, the complaint was properly dismissed. *Rogers* v. *Penobscot Min. Co.,* 154 Fed. 606, 83 C. C. A. 380; *Northern Ind. R. R. Co.* v. *Michigan Cent. R. R. Co.,* 15 How. (U. S.) 233, 14 L. Ed. 674.

The assent of the plaintiff to the resolution was not procured by fraud, and in the absence of findings of fact, it must be assumed that the court found that there was no fraud, and there being evidence to sustain such finding, it cannot be questioned upon appeal. The plaintiff was present at the meeting and voted for the resolution. There being no fraud he was estopped from questioning the validity of the resolution. 2 Cook on Corporations, sec. 729, fifth edition, p. 1847. The interveners were represented at the meeting by proxies and voted for the resolution and were estopped from complaining. *Columbia Nat. Bank* v. *Mathews,* 85 Fed. 934, 29 C. C. A. 491.

Even though the proposition of the plaintiff that the general proxy given did not authorize the party holding the proxy to sanction an *ultra vires* act, under the circumstances surrounding this suit the interveners are guilty of laches. *Synnott* v. *Cumberland etc. Assn.,* 117 Fed. 379, 54 C. C. A. 553; *Kent* v. *Quicksilver Co.,* 78 N. Y. 157, 4 Morr. Min. Rep. 47; *Snow* v. *Boston etc. Co.,* 158 Mass. 325, 33 N. E. 588; 2 Cook on Corporations, sec. 733, fifth edition, p. 1865, note 1.

The passage of the resolution was not an *ultra vires* act. The minority stockholders have no right to prevent the dissolution of the corporation if the majority of the stockholders will its dissolution.

NAVE, J.—This is an action brought by the appellants to set aside a reorganization of the Cieneguita Copper Company, a solvent, going corporation organized under the laws of this territory, into the Cieneguita Copper Company, a corporation organized for the purpose under the laws of the state of Nevada, with the same capitalization as the Arizona corporation, pursuant to which all of the assets of the Arizona corporation were conveyed to the Nevada corporation, under an agreement that the Nevada corporation should assume the debts of the Arizona corporation, and that the stock of the Arizona corporation should be replaced, share for share, in the hands of the shareholders by stock of the Nevada corporation. At the annual meeting of the Arizona corporation in December, 1905, this reorganization was proposed. The appellant T. E. Farish was personally present at the meeting, and voted for the reorganization. The other appellants

were represented by proxies, who also voted for the reorganization. The instruments appointing proxies each conferred authority to vote at that annual meeting, and at any adjourned meetings thereof, with the provision that, "I hereby grant my said attorney all the power that I would possess if personally present at such meetings." In the course of exchanging the stock of the Arizona corporation for stock of the Nevada corporation the Nevada corporation refused to issue its stock to certain stockholders, when presented for exchange, except with certain restrictions upon the right of alienation thereof. Among these was the appellant T. E. Farish, who declined to accept the restrictions, and instituted this suit to annul the reorganization. After the suit had been pending for some months, the remaining appellants obtained leave to intervene in the action to join Farish in the pursuit of the same relief. It does not appear that a purpose to defraud any person lay behind the reorganization, or that the effect of the reorganization, when fully carried out, will be to defraud any person.

At the outset it is to be observed that the reorganization of a corporation into a new corporation is not vulnerable upon the ground that it is *ultra vires*. It is not a matter of corporate power which is involved, but the matter of the rights of the stockholders under the corporate compact. It is quite clear that, in the absence of statutory authority, such a reorganization of a solvent, going corporation may not be accomplished without the unanimous consent of the stockholders, but this is not because the reorganization is beyond the corporate power, but because it ruptures the corporate compact, which, as in the case of all contracts, can lawfully be broken only by the unanimous agreement of all the parties thereto. By loose usage the term "*ultra vires*" has been applied to an attempted reorganization without unanimous consent, because it is beyond the lawful power of the majority thus to break the corporate compact. The converse of the proposition is equally true: That, since the reorganization involves no question of corporate power, it may lawfully be accomplished by the consent of all the stockholders. It appears from the record that this action was dismissed in so far as the appellant T. E. Farish is concerned, upon the ground that, no fraud or deception having been practiced

upon him, he having voted in person for the reorganization, is bound by his action. This conclusion is so evidently well founded that it needs neither elaboration nor the citation of authorities. His acquiescence in the reorganization is supplementally shown by his presentation of his stock for exchange. His grievance does not lie in the reorganization, but in what he contends to be a departure from its conditions. His relief must be sought by an action to compel due performance of those conditions.

The status of the other appellants is different, in that they were not personally present at the stockholders' meeting, which authorized the reorganization, and do not appear to have presented their stock for exchange. They were, however, as has been stated, represented by proxies, who voted for the reorganization. There is no statute in Arizona which expressly authorizes voting by proxy at corporate meetings; nor does it appear that either the articles of incorporation or the by-laws of the defendant company authorize voting by proxy. Without determining whether, in this state of the public and corporate law, stockholders may lawfully be represented at corporate meetings by proxies, we hold that a stockholder, who was in fact represented by an authorized proxy, is estopped to contend that his proxy could not lawfully be recognized. We hold, further, that, assuming, but not deciding, that measures which were carried only by the aid of the votes of proxies are voidable at the suit of stockholders who objected to the recognition of proxies, or who did not participate in the meeting, they are not absolutely void, and thus open to the attack of a participating or acquiescing stockholder. These appellants, therefore, having acquiesced in the reception of votes by proxy by sending proxies to the meeting, cannot be heard to assert that the proxies of other stockholders ought not to have been recognized.

These appellants contend that the authority conferred by them upon their proxies, broad and comprehensive though it is, did not extend beyond the authority to represent them in such business as might, in the ordinary course of corporate affairs, be expected to come before the annual meeting; that it cannot be construed as authorizing their proxies to destroy the business of the corporation, and make their

principals parties to the incorporation of a new corporate entity and stockholders therein. There is force in this contention. Comprehensive though the instruments are in conferring ''all the power that'' the principals ''would possess if personally present at such meeting,'' it is quite manifest that the authority is not unlimited. The principals, while present at the annual meeting, would, in their individual capacities, have all their ordinary powers. They could as individuals execute promissory notes, release mortgages, and accomplish any other of their ordinary activities. The wording of the instruments, if broadly construed, authorizes the proxies to do all of these ordinary acts. Literally included within the terms of the authority though such general power is, it cannot be contended that such acts of the agents so authorized would have validity as being within the scope of their authority. *Moore* v. *Ensley*, 111 Ala. 228, 20 South. 744. The quoted expression of the instruments must be limited, in the light of the earlier expression therein that ''I, the undersigned, do hereby appoint A. B. to vote as my proxy . . . at the annual meeting, . . . on the stock then standing in my name.'' The authority conferred cannot reasonably be held to extend beyond the transaction, with ''all the power that'' the stockholders themselves ''would possess if personally present,'' of any business which might properly come before that meeting; that is to say, of corporate business. The incorporation of a new company, the changing of the stockholders' status from that of stockholders in the present company to stockholders in a new company, is not within the normal scope of the business of the stockholders' meeting. It is not business of, or pertaining to, the corporation until and unless the corporate compact is changed by unanimous consent, as above pointed out. It creates an entirely new contractual relation on the part of the individual stockholders, and is as foreign to the business of the stockholders' meeting as is the release of the mortgage which is the subject matter of the case of *Moore* v. *Ensley*, *supra*. No rights of third parties can be predicated upon such an action of the proxies; for, in accordance with the fundamental law of agency, those dealing with an agent are bound to ascertain the extent of the agent's authority, and, subject to easily recognized exceptions, may not hold the principal estopped by the action of his

XII Ariz.—16

agent beyond the scope of that authority.  Hence we hold
that these latter appellants are unaffected by the action of
their proxies in voting for this reorganization.  *McKee* v.
*Home Sav. etc. Co.*, 122 Iowa, 731, 98 N. W. 609; *Smith* v.
*Smith*, 3 Desaus. (S. C.) 557.

The appellee contends that these appellants are estopped
by laches to complain.  It appears that no notice or intima-
tion was given to the stockholders that such a proposition
would be presented at the stockholders' meeting, and that the
intervenors Wilson and Williams were without knowledge
that such a reorganization had been attempted until imme-
diately prior to the institution of this suit by T. E. Farish.
Until they had acquired knowledge that their rights were
being infringed they could not take legal proceedings to pro-
tect themselves.  The suit by T. E. Farish was instituted ''on
behalf of himself and other stockholders similarly situated.''
His action brought into litigation the substance of their rights
in the matter, in their interest as well as in his.  Therefore
the period of several months which elapsed between the in-
stitution of the suit and their appearance in it as inter-
venors cannot be counted against them as evidencing laches.

Appellee contends still further that, by paragraph 772 of
the Civil Code of 1901, it is provided that a corporation may
be dissolved by a majority vote of its members; that the re-
organization here attempted is equivalent to a dissolution, and
therefore was properly accomplished by a majority vote of
the stockholders.  This position is untenable.  ''Dissolution''
of a corporation denotes its complete destruction, and con-
notates the liquidation and distribution of its assets.  The
reorganization here attempted did not contemplate the ter-
mination of the corporate business, nor liquidation and dis-
tribution.  It was an attempt to continue the corporate busi-
ness under a new corporate entity, in a foreign jurisdiction.
This is not a dissolution.  *Mason* v. *Pewabic M. Co.*, 133 U. S.
50, 10 Sup. Ct. 224, 33 L. Ed. 524.  Appellee contends, fur-
ther, that this reorganization is valid by reason of the pro-
visions of Act No. 82 of the Laws of 1903, providing for the
judicial dissolution of a corporation, ''whenever at any gen-
eral or special meeting of the stockholders of any such cor-
poration, the holders of the majority of its outstanding stock
represented or voting at any such meeting shall have directed

the disposal of all corporate assets or that the corporation be dissolved, or that it cease to use or exercise its corporate franchise; or whenever the directors or officers or managing board of any such corporation being thereto authorized or directed by a majority of the outstanding stock thereof, represented or voting at any general or special meeting thereof, shall have disposed of all the corporate assets or dissolved or attempted to dissolve or secure the dissolution of such corporation, or shall have done or attempted to do any of the aforesaid.'' Passing, without consideration, the question whether that act can affect the right of stockholders in a corporation incorporated, as this corporation was, prior to its enactment, and passing also the question whether the act may properly be construed as conferring authority upon a majority of the stockholders to dispose of all the corporate assets except as a part of the process of dissolution, liquidation, and distribution, it is sufficient to point out that manifestly the act does not authorize the majority of the stockholders to give away the corporate assets, or to place upon nonassenting stockholders the necessity of being parties to a continuation of the corporate business under a new corporate franchise. *Mason* v. *Pewabic M. Co., supra; Theis* v. *Spokane etc. Co.*, 34 Wash. 23, 74 Pac. 1004; *Forrester* v. *Consolidated Co.*, 21 Mont. 544, 55 Pac. 230, 353. The disposal of the assets here attempted was not a disposal in the sense of a sale for a consideration, but was an attempted transfer of all of the corporate assets, without any consideration whatsoever accruing to the transferring corporation. Such consideration as appears in the transaction is in the form of an exchange of stock of the new corporation for the stock of the old corporation in the hands of the stockholders.

Finally, however, it is contended by the appellee that the appellants must fail because the Nevada corporation is not a party to this litigation. The sustaining of this contention would involve the impaling of appellants on the horn of one of two dilemmas in the pursuit of relief. If in the pursuit of a remedy in this jurisdiction, he can be met successfully by the objection that the Nevada corporation is an essential party in interest, and that, the relief sought being personal in its nature, the Nevada corporation cannot be brought within the jurisdiction of the decree unless it voluntarily appears in

the suit, they will more effectually be met in the pursuit of relief in the Nevada court by the defense that the appellee is a necessary party, that for the same reason jurisdiction cannot be obtained of it in Nevada, and that the appellants cannot be heard to sue in Nevada in the name of, or in behalf of, the appellee, because they are suing in their own interest, for relief from the unauthorized act of their own corporation. *East Tenn. etc. Co.* v. *Grayson,* 119 U. S. 240, 244, 7 Sup. Ct. 190, 30 L. Ed. 382. It is well to repeat that this reorganization is not on its face void. For reasons adequately pointed out, it is not void, but voidable. It would be unassailable if based on prior consent of all the stockholders, or if subsequently ratified by acquiescence. Hence to avoid and set aside the reorganization, the interest of those who brought it about and formally consented to it, and of the corporate entity which, acting through its directors, made the transfer of the assets pursuant to the plan of reorganization, must be foreclosed. This can be done only by a suit to which the corporation itself is a party. It seems preposterous that the consummation of the unauthorized act shall effectually bar the parties injured from the pursuit of relief. Under such circumstances courts will be astute to find an available remedy. It is evident that unless there be, precedent to, or contemporaneous with, a judgment compelling the Nevada corporation to make restitution of the assets of the Arizona corporation, a decree nullifying the transfer of those assets to the Nevada corporation, the decree of restitution may not be had. Since, by reason of the absence of the Nevada corporation, which is a necessary party to a decree of restitution, that decree cannot be had in this suit, it follows that at the most the relief which can be afforded by this court is the annulling of the apparent authority of the board of directors to make that transfer, which annulment, when accomplished, paves the way for an action by appellee or by appellants on behalf of the appellee in a Nevada court to procure such restitution. While in the nature of things such judgment of this court cannot be conclusive of the rights of the Nevada corporation, nor controlling of the decision of the Nevada court, it would serve at least the purpose of paving a way for an inquiry by a Nevada court into the merits of any defense which the Nevada corporation may have to

interpose to a suit for the restitution by it of the transferred assets. It seems to us that we need not impale the appellants upon the horn of either of the dilemmas presented by the contention of the appellee, but that we may award to them that modicum of relief which will remove the obstacles which now stand between them and a right to be heard in a Nevada court.

The trial court dismissed the action of the interveners without prejudice to such rights as they might have to institute proceedings in courts of Nevada. The dismissal should be set aside, and by judgment entered in this court the action of the stockholders' meeting, in attempted authorization of the transfer of the assets of the appellee, and the action of the directors and officers pursuant thereto, should be decreed null and void. It is so ordered.

SLOAN, DOAN, and CAMPBELL, JJ., concur.