(No. 5805.   September 9, 1932.)

L. E. WHICHER, WILLIAM W. COHN and WM. SUL-
ZER et al., Appellants, v. DELAWARE MINES COR-
PORATION, a Corporation, and MATT BAUMGART-
NER et al., Directors and Officers Thereof, and
ASSOCIATED MINES CORPORATION, LIMITED, a
Corporation, and MATT BAUMGARTNER et al., Re-
spondents.

[15 Pac. (2d) 610.]

Therrett Towles, for Appellants.

John M. Gleeson and Frank Griffin, for Respondents.

LEEPER, J.—This action is primarily concerned with the validity of the reorganization of a corporation, whereby it was attempted to convert nonassessable shares of its capital stock into assessable shares. The facts out of which the action arose are as follows: The Delaware Mines Corporation is an Idaho Corporation, organized in 1926, and continuously thereafter existing, in which the plaintiffs are stockholders, their stock being nonassessable by express provision of the articles of incorporation, and each certificate bearing upon its face the words, "Fully paid and nonassessable." The appellant Whicher is the owner of 232,100 shares of the stock, the consideration received on account of the transfer of the Rex group of mining claims to the company, and the other plaintiffs are the owners of lesser amounts of the stock, all constituting a minority. The respondents Baumgartner, Bailey, Mrs. Bailey, Hooper and Cox are the directors of the company, Baumgartner being president and Bailey vice-president and manager. Baumgartner and Mr. and Mrs. Bailey own more than 900,000 shares of the company and have exercised substantial control ever since its organization.

The company is the owner of certain patented and unpatented mining claims and a considerable amount of mining machinery and other property. It had been financed

entirely through sales of stock, the selling program having been handled by Baumgartner upon a commission basis. By the year 1930 it was no longer possible to sell stock in amounts adequate to continue the financing of the company by that method, and the company had no cash wherewith to continue operations. By September of that year its alleged indebtedness amounted to $17,268, of which Baumgartner claimed $9,040.51 was due him for commissions on sales of stock, and of which Bailey claimed $4,133.50 was due him for past services as manager. The balance of the indebtedness was represented by loans and open accounts.

It appears that there had been considerable correspondence between appellant Whicher and Baumgartner and Bailey relative to this indebtedness, beginning in 1928. In August of 1930, Baumgartner, Bailey and Ferguson met as a board of directors and passed a resolution whereby Baumgartner was allowed to take a compressor and motor belonging to the company at an agreed price of $1,800, to be credited on his account. On September 29, 1930, Baumgartner called a special stockholder's meeting, mailing a notice thereof to each stockholder and asking for proxies. In this notice he advised the stockholders that steps must be taken to pay the debts and suggested a reorganization on an assessable basis, but he did not advise as to the amount of the indebtedness or to whom it was owing.

Pursuant to this notice, the stockholders' meeting was held on October 27, 1930. At this meeting only Baumgartner, Bailey and wife and two persons named Lindquist were present, and the records are in such shape that it is difficult to determine therefrom whether or not a majority of the stock was present and legally voted in favor of the resolution adopted thereat. The plaintiffs were not present, either in person or by proxy. The resolution provided in substance, (1) that the company was indebted, that the stock was nonassessable and unsalable, and that it was necessary to raise money to pay debts and to perform annual assessment work; (2) that a new corporation be organized by the officers with three million shares of assessable stock,

to be exchanged share for share for the Delaware stock, with this exception, that Baumgartner and Bailey should receive 100,000 shares each of stock in the new company; (3) that in payment for this stock the Delaware company transfer to the new company all of its assets, except to the extent of ten cents per share to be left unpaid; (4) that the new company carry on the work of the old company; (5) that the new company assume and pay the debts of the old company from assessments to be levied on the stock; (6) that if any other stockholder had a different plan for raising funds it should be considered.

Pursuant to the resolution on November 12, 1930, Baumgartner, Bailey and one Kingsbury organized the Associated Mines Corporation, Ltd., under the laws of Idaho with three million shares of assessable stock; Baumgartner, Bailey, Cox and Kingsbury became its directors, Baumgartner its president, and Bailey its vice-president and manager. On November 22, 1930, and approximately a month after the meeting, Baumgartner advised the Delaware stockholders of the action taken, and further advised them that a levy of two dollars per thousand shares had been made to defray the expenses of reorganization, a total levy of $6,000. In the meanwhile Whicher, upon receipt of the notice of the special stockholders' meeting, had protested by letter the plan of reorganization proposed by Baumgartner and demanded a detailed statement of the indebtedness, to which no answer was made. On October 4th Whicher forwarded by letter a plan of reorganization very different from the one adopted, and one which did not provide for assessable stock. On December 1, 1930, after receipt of the second notice, he again protested and demanded a statement, without avail.

Baumgartner and Bailey proceeded with the reorganization program, caused certificates for 100,000 shares each in the Associated company to be issued to themselves, and likewise issued a certificate for 232,100 assessable shares in the Associated company to appellant Whicher and certificates similar except in amount to all other appellants who had

refused to consent to the plan of reorganization. These appellants refused to accept this stock. On February 17, 1931, an assessment was levied on the issued stock of the Associated company by its board of directors, and appellants having refused to pay the same, their stock was advertised for sale according to the statute.

Thereupon this action in equity was instituted by the appellants, praying in the alternative either that the Associated company be required to issue to them nonassessable stock and be restrained from selling the same for non-payment of assessments or that the transfer of all of the assets of the Delaware company to the Associated company be declared void and that the latter company be required to reconvey all of said property, and that all stock in the Delaware company theretofore turned over to the Associated company be returned to the respective persons entitled thereto and the latter company dissolved. Appellants prayed for an injunction against the officers of the Associated company, enjoining them from selling appellants' stock, from levying any further assessments and from applying any proceeds derived from assessments to their own indebtedness; demanded an accounting from Baumgartner and Bailey of all moneys received by them from either company, and asked restitution of the compressor and motor from Baumgartner; prayed for the appointment of a receiver, and the ouster of Baumgartner and Bailey; prayed that both corporations be required to keep the corporate records at Wallace, Idaho, as required by statute.

The facts heretofore detailed are undisputed, being either admitted by the pleadings or proven by written instruments. Appellants made certain allegations of actual fraud against respondents Baumgartner and Bailey, which were denied by respondents. The defenses urged were: (1) That there was no actual fraud in the transaction; (2) that Whicher is estopped to maintain this action because he himself had offered a plan of reorganization which was rejected; (3) that by its charter a majority of the directors of the Delaware company had power to sell all of its property for

stock in another corporation. After the trial the court found the admitted facts, found against the appellants on the issue of actual fraud, and upheld the transaction as legal in every particular. All relief was denied plaintiffs, except that defendants were required to keep corporate records in Idaho as required by law. From this judgment this appeal has been prosecuted.

The organization of the new corporation by the directors of the Delaware company and subsequent proceedings constituted a reorganization of the latter company, under the rule announced in *Seymour v. Boise R. R. Co., Ltd.,* 24 Ida. 7, 132 Pac. 427:

"The organization of the Boise Railroad Co. and the transfer of all the property and franchises of the Boise Traction Co. to the railroad company was in fact and law only a reorganization of the old company,—the new corporation having a board of directors who composed a majority of the board of directors of the old corporation and more than 98% of the subscribed stock of the new corporation being held by the same stockholders who held the stock of the old corporation."

The stockholders of the Associated company were the stockholders of the Delaware company; the boards of directors and the officers were almost identical; the Delaware company transferred to the Associated company all of its assets without consideration other than the issuance of Associated stock to Delaware stockholders; the Associated company assumed and agreed to pay the debts of the Delaware company and carried on its business; the expense of reorganizing the Associated company was paid by the Delaware company or its stockholders. It is apparent that, had the new set-up been carried to completion, the only change which would have been effected was in the corporate name and in the assessability of the stock. Therefore this matter must be disposed of upon the assumption that the transaction was a reorganization of the Delaware company, and not a sale or transfer in the commonly accepted significance of those terms. (*Stanford Hotel Co. v. M. Schwind*

*Co.,* 180 Cal. 348, 181 Pac. 780; *Blanc v. Paymaster Min. Co.,* 95 Cal. 524, 29 Am. St. 149, 30 Pac. 765; *Meeks v. Arkansas Light & Power Co.,* 147 Ark. 232, 227 S. W. 405.)

No specific statutory authority for the reorganization of a corporation is contained in the laws of Idaho, either in the Business Corporation Act of 1929 or elsewhere. The Business Corporation Act does make provision for the merger and consolidation of corporations (Sess. Laws 1929, chap. 262, secs. 38–43), which carry some of the attributes of a reorganization. We are concerned here, however, with an attempted voluntary reorganization of the Delaware company similar to that proposed in *Seymour v. Boise R. R. Co., Ltd., supra,* which can be accomplished, absent statutory authority, only upon the consent and agreement of all the stockholders.

"But where there has been no judicial sale of the prop-' erty, a reorganization can be accomplished by the stockholders only upon the consent and agreement of all, unless there is some statutory provision or an agreement by which the stockholders either not consenting or not consulted shall be protected." (8 Thompson on Corporations, 3d ed., p. 41, sec. 5988.)

There can be no question as to the right of stockholders to reorganize their corporation, but this right is subject to this well-defined rule that a part of the stockholders, even a majority, cannot reorganize and deprive nonconsenting stockholders of their property or change their contract rights, without their consent. A stockholder has a vested interest in the corporate property and earnings, represented by his shares of stock, of which he cannot be deprived, in the absence of a delinquency which justifies and authorizes forfeiture. (14 C. J. 480, sec. 707.) The attributes which attach to a share of stock are well defined in *Kent v. Quicksilver Mining Co.,* 78 N. Y. 159:

"The holding and owning of a share gave a right which could not be divested without the assent of the holder and owner; or unless the power to do so had been reserved

in some way. (*Mechanics' Bank v. N. Y. & N. H. R. R. Co.*, 13 N. Y. 599–627.) Shares of stock are in the nature of *choses in action*, and give the holder a fixed right in the division of the profits or earnings of the company so long as it exists, and of its effects when it is dissolved. That right is as inviolable as is any right in property, and can no more be taken away or lessened, against the will of the owner than any other right, unless power is reserved in the first instance, when it enters into the constitution of the right; or is properly derived afterwards from a superior law giver. The certificate of stock is the muniment of the stockholder's title, and evidence of his right. It expresses the contract between the corporation and his co-stockholders and himself; and that contract cannot, he being unwilling, be taken away from him or changed as to him without his prior dereliction, or under the conditions above stated.''

In general it may be said that stockholders who do not consent to a proposed reorganization, to be effectuated through a new corporation, cannot be compelled to participate in the continuation of the corporate business under the new corporate franchise. In other words, nonassenting stockholders ''may not lawfully be compelled to accept a change of investment made for them by others, or to elect between losing their interests or entering a new company.'' (*Geddes v. Anaconda Copper Min. Co.*, 254 U. S. 590, 41 Sup. Ct. 209, 212, 65 L. ed. 425. Other cases to the same effect are: *Farish v. Cieneguita Copper Co.*, 12 Ariz. 235, 100 Pac. 781; *Cattlemen's Trust Co. v. Beck*, (Tex. Civ. App.) 167 S. W. 753; *Garrett v. Reid-Cashion Land & Cattle Co.*, 34 Ariz. 245, 270 Pac. 1044; *Koeler v. St. Mary's Brewing Co.*, 228 Pa. 648, 139 Am. St. 1024, 77 Atl. 1016; *Elyton Land Co. v. Dowdell*, 113 Ala. 177, 59 Am. St. 105, 20 So. 981; *Morris v. Elyton Land Co.*, 125 Ala. 263, 28 So. 513; *Bank of China, Japan & The Straits v. Morse*, 168 N. Y. 458, 85 Am. St. 676, 61 N. E. 774, 56 L. R. A. 139; *Mason v. Pewabic Mining Co.*, 133 U. S. 50, 10 Sup. Ct. 224, 33 L. ed. 524; *Finch v. Warrior Cement Corp.*, 16 Del. Ch. 44, 141 Atl. 54; *Jackson Co. v. Gardner Investment Co.*,

200 Fed. 113; *American Seating Co. v. Bullard,* 290 Fed. 896; *Theis v. Spokane Falls Gaslight Co.,* 34 Wash. 23, 74 Pac. 1004; *Geiger v. American Seeding Machinery Co.,* 124 Ohio St. 222, 177 N. E. 594; *In re Doe Run Lead Co.,* 283 Mo. 646, 223 S. W. 600. See, also, 14 C. J. 867, sec. 1323.)

A rule of similar import has been embodied in the Business Corporation Act (Sess. Laws 1929, chap. 262, sec. 43), with reference to mergers and consolidations, whereby the rights of nonconsenting stockholders must be protected. It seems apparent that, even without considering other matters which we shall hereafter discuss, these appellants cannot against their will be compelled to take stock in the Associated company in lieu of their stock in the Delaware company.

Appellants urge the further contention that the proposed reorganization simply amounted to an effort to change their nonassessable shares in the Delaware company to assessable shares in the new corporation, and that such a program if carried out would violate their contract rights and deprive them of property in violation of constitutional limitations. This position is also well founded in law.

It is the settled law of this state that when a corporation organized in the state issues stock certificates as nonassessable, this clause becomes a matter of agreement and a part of the contract and the corporation itself has no power to levy an assessment thereon in violation of the contract. The rule was originally announced by this court in *Wall v. Basin Min. Co., Ltd.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, in the following language:

"Our attention has not been directed to any statutory provision, and we know of none, which prohibits the articles of incorporation from containing a provision to the effect that the stock issued by the corporation is 'nonassessable.' Neither is there any provision of the statute which would prohibit a corporation from so providing in its by-laws. The effect of such provision would be in the nature of an agreement between the stockholders of the corporation and between the stockholders and the corpora-

tion, to the effect that the corporate stock of such corporation would not be 'assessed,' thereby agreeing that if obligations of the corporations were to be discharged and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness instead of raising the same by assessment against the stock. So, when the corporation certifies that the shares represented by a certificate are 'nonassessable,' such provision becomes a part of the contract between the corporation and the stockholder, and as between the corporation and stockholder such agreement may be relied upon and enforced.''

The rule is approved and followed in *Jonas v. Frost,* 32 Ida. 214, 179 Pac. 949, where the court took a further step in announcing that the contract might be changed by *agreement* between the stockholder and the corporation. In *Reinertsen v. Idaho Power & Concentrating Co., Ltd.,* 32 Ida. 353, 182 Pac. 851, not only was the proposition again affirmed, but it was held that the contract need not be written into the certificate and could be proven by any competent evidence. These cases have been cited and approved in *Porter v. Northern Fire & Marine Ins. Co.,* 36 N. D. 199, 161 N. W. 1012, and *Lum v. American Wheel & Vehicle Co.,* 165 Cal. 657, Ann. Cas. 1915A, 816, 133 Pac. 303.

Thus it will be observed that the question is no longer open in Idaho. In this case appellants' position is bottomed, not only upon an agreement written into the certificate, but upon a specific provision in the charter of the Delaware company. The practical substance of their agreement with the company is, as was stated in *Wall v. Basin Min. Co., Ltd., supra,* ''if obligations of the corporation were to be discharged and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness instead of raising the same by assessment against the stock.'' Upon this contract these appellants had the right to stand. Nor does the fact that the creditors might

effect a judicial sale of the property affect their position in the slightest degree. (*Seymour v. Boise R. R. Co., Ltd., supra.*)

Nor can this contract be abrogated through the process of a reorganization by the new entity, any more than it can be abrogated by the original corporation. The nonassenting stockholder cannot be forced into the new corporation at all, nor can he be deprived of his nonassessable stock against his will by any majority in any manner.

There is reference in the Business Corporation Act, secs. 33–37 (Sess. Laws 1929, chap. 262), to the amendment of corporate charters, which appears to authorize a change in the rights of shareholders by the taking of the procedure therein outlined. We are not called upon to construe this act, for the reason that respondents did not attempt to amend the charter of the Delaware company in the manner prescribed, or at all. It is to be noted, however, that by the express provision of section 37, any stockholder who does not assent to the change in his shares may object thereto and demand payment for those shares, and the corporation must purchase them before the proposed change can go through. Here the Idaho legislature has again recognized the rule heretofore enunciated. It is also to be noted that the rights of these appellants became fixed long prior to the passage of the Business Corporation Act in 1929, and under the express provisions of the saving clause (sec. 47) are not affected thereby.

The main argument advanced by respondents in support of the transaction complained of is this: That the company was insolvent and could not pay its debts, and that by reason of this condition and by virtue of authority contained in the articles of incorporation and section 32 of the Business Corporation Act, the directors were empowered to *sell* the assets of the Delaware company to the Associated company and accept stock of the latter in payment therefor.

Subdivision 3 of article XIII of the articles of incorporation of the Delaware company provides as follows:

"In furtherance, and not in limitation of the powers conferred by statute, the Board of Directors are expressly authorized: . . . .

"3. By resolution adopted by a majority of the whole Board of Directors to sell, bond, lease or otherwise dispose of any portion or the entire property of the corporation for the stocks, bonds, obligations, or other securities of another corporation, either domestic or foreign, or for cash, or partly cash, credit or property, or for such other consideration as the Board of Directors in its discretion may determine."

And section 32 of the Business Corporation Act (Sess. Laws 1929, chap. 262) provides as follows:

"I. A voluntary sale, lease or exchange of all the assets of a corporation may be authorized by it upon such terms and conditions as it deems expedient, including an exchange for shares in another corporation, domestic or foreign.

"II. If the corporation is able to meet its liabilities then matured, such authorization shall be given at a meeting of shareholders, duly called for that purpose, and by such vote of the shareholders as may be provided for in the articles of incorporation or, if there be no such specific provisions, then by vote of the holders of two-thirds of the voting power of all the shareholders. If the corporation be unable to meet its liabilities then matured, such authorization may be given by the vote of the board of directors.

"III. This section shall not be construed to authorize a conveyance or exchange of assets in fraud of corporate creditors or of minority shareholders, or shareholders without voting rights, or in violation of the Bulk Sales Law."

Conceding that under this authority the directors of the Delaware company had the right to *sell* the assets of the company (provided that it was unable to meet its liabilities then matured) to another corporation and accept shares of stock in the latter company in payment, the position is not sustained by the present record. In this case there was no sale, but the transaction was merely a reorganization of the Delaware company, as we have heretofore stated. No con-

sideration passed to the Delaware company, nor was the transfer of Associated shares to shareholders of the Delaware company within the purview of the statute above quoted.

A transfer of corporate property to its reorganized entity is not a sale, within the terms of this charter provision or the statutory enactment.

"But there seems to be neither a sale or an exchange nor other disposition of the mining property, within the meaning of the statute. 'To otherwise dispose of' does not signify and include 'to give away,' within the meaning of the statute. The New York corporation is formed. It has no property. It possesses nothing but a name. Attempt is made in the name of the Montana Company to convey its property to the New York Company, for which the Montana Company receives nothing in return. It does not exchange its property for other property. There is, in effect, simply a change in corporate habitation. So far as stockholders are concerned, they are perhaps permitted to exchange their shares in the Montana Company for the same kind of property in another state, and the laws of Montana for the laws of New York. The statute does not provide that, by a two-thirds vote, stockholders shall exchange their shares for shares in another corporation, or in the same corporation with changed citizenship. It has no reference to such a scheme. A stockholder, we think, may not be compelled to take, in lieu of his stock in the Montana Corporation an equal number of shares in the New York Corporation, or the value of those shares; nor can he be compelled to accept payment for his shares in any other way than that prescribed by the Montana statute on a dissolution of the Montana Corporation. The Montana Company conveys all its property, and gets nothing in return. If the trustees attempt to wind up its affairs under section 489, *supra,* there would be nothing to distribute. The new company promises to issue certain of its shares to each Montana stockholder, but we are unable to see how he can be deprived of his interest in the Montana Company with-

out his consent." (*Forrester v. Butte & M. Consolidated Copper & Silver Min. Co.*, 21 Mont. 544, 55 Pac. 229.)

Other cases are: *Kremer v. Public Drug Co.*, 41 S. D. 365, 170 N. W. 571; *Farish v. Cieneguita Copper Co.*, *supra;* *Garrett v. Reid-Cashion Land & Cattle Co.*, *supra;* *Dalsheimer v. Graphic Arts Co.*, 86 N. J. Eq. 49, 97 Atl. 497; 89 N. J. Eq. 210, 107 Atl. 586. The cases cited by respondents' counsel on this point, as well as the text authorities quoted, are concerned with actual sales, and not such a transaction as is complained of here.

██ Counsel for respondents also urges upon us the settled rule that where there is a substantial conflict in the evidence upon which any certain finding of fact is based, the finding will not be disturbed. As we have heretofore stated, the record before us is almost entirely documentary and is without substantial dispute. The greater part of the allegations contained in appellants' complaint were admitted by the answer. While the court found that there was no fraud and that Whicher was estopped, both findings were attacked for insufficiency. In view of the undisputed facts as disclosed by the record, both specifications are well founded, and it is within our province to so find. The correct rule to be applied by this court is that set out in *Quayle v. Ream*, 15 Ida. 666, 99 Pac. 707, *Spofford v. Spofford*, 18 Ida. 115, 108 Pac. 1054, and *Dickens-West Min. Co. v. Crescent Mining & Milling Co.*, 26 Ida. 153, 141 Pac. 566, all to the effect that where there is no substantial conflict and the evidence is largely documentary, this court will examine it anew to determine whether it is sufficient to sustain the finding.

██ Respondents contend that appellant Whicher consented to the reorganization as contemplated, and is therefore estopped to complain, citing *Jonas v. Frost, supra.* In that case the complaining stockholder had actually voted in a stockholders' meeting to change the stock from a nonassessable basis to an assessable one, had surrendered his nonassessable stock, received assessable stock in lieu thereof, and had actually paid five assessments. The court there

held, and rightly so, that he was estopped. The situation is radically different in the matter now before us. Upon receipt of the notice of the stockholders' meeting, Whicher promptly protested against the scheme proposed. Some few days later he proposed a plan of his own, which was entirely different from that of the majority and in which he expressly refused to change the stock to an assessable basis. He received no answer to either letter. He did not participate in the meeting at which the reorganization was approved, did not vote for the resolution, did not exchange his stock, and has never paid any assessment thereon. We fail to find anything in the conduct of Mr. Whicher upon which consent could be inferred or an estoppel based. It is apparent, not only that he did not consent, but that he strenuously objected and made his objections known to the officers and directors who controlled the corporation and who were instrumental in forcing the reorganization program. (*Cattlemen's Trust Co. v. Beck, supra.*)

In disposing of the case we have not considered it necessary to pass upon the charge of actual fraud against Baumgartner and Bailey by appellants. The transactions complained of were illegal and constructively fraudulent, no matter with what intent the actors were animated. The obvious purpose of these defendants was to change nonassessable stock to assessable stock, and thus force the stockholders against their will to finance the corporation and to pay its debts, the greater portion of which debts were owing to these same persons, who were directors and officers of both companies. The facts give rise to added suggestions of illegality. Directors and officers of a corporation are bound to a high degree of good faith in discharging their duties. (Business Corporation Act, Sess. Laws 1929, chap. 262, sec. 29.) The meeting at which the resolution providing for a reorganization was passed was entirely dominated and controlled by Baumgartner and Bailey, and each of them was highly interested in the successful accomplishment of the plan, because they thereby expected to have the obligations due them paid. Since the necessary result of

carrying out the plan was to force the nonassenting minority either to lose their interest in the corporate property or to pay their *pro rata* share of the debts due these officers, against their will and contrary to the obligations of their contract, the impropriety of the proceeding is obvious. In this connection the principles laid down in *Ryan v. Old Veteran Min. Co.*, 37 Ida. 625, 218 Pac. 381, *Riley v. Callahan Min. Co.*, 28 Ida. 525, 155 Pac. 665, and *Morton v. Morton Realty Co.*, 41 Ida. 729, 241 Pac. 1014, are controlling. The situation is further aggravated by the fact that the stockholdings of Baumgartner and Bailey were greatly reduced in the new company, thereby adding to the proportionate liability of the minority stockholders.

Appellants also complain of the taking of a compressor and motor by Baumgartner at an agreed value of $1,800, which he resold at a profit of $300, this charge being made as a part of the allegations of abuse of trust by Baumgartner. It appears that this deal was authorized at a meeting of the board of directors of the Delaware company at which were present Baumgartner, Bailey and Ferguson, a bare quorum. Baumgartner's presence was necessary to make up the quorum and he voted in favor of the transaction. It is a general rule that interested directors cannot be counted for the purpose of determining whether or not a quorum exists at a meeting which passes upon the matter in which they are interested.

"A director who is disqualified by personal interest from voting on a particular matter before the meeting cannot be counted for the purpose of making a quorum or a majority of the quorum. The act done is invalid where his presence is necessary to constitute a quorum, or where his vote is necessary to the passage of the resolution, regardless of the fairness or good faith of the transaction; . . . . " (14a C. J. 92, sec. 1854.)

When action advantageous to a director is taken at a meeting in which he participates and where his presence is necessary to constitute a quorum, that action is voidable

at the instance of the corporation, or, if it refuse to act, at the instance of a nonconsenting stockholder.

"It has frequently been held by this court that there is no legal quorum of directors present when action is attempted to be taken on matters as to which one of the directors, requisite to make the quorum is present. . . . . Trustees may not vote as trustees upon matters coming before the board in which they have a personal interest, and if a trustee does, the action of the board is voidable and may be set aside at the instance of the corporation, or nonconsenting stockholders." (*Hein v. Gravelle Farmers' Elevator Co.*, 164 Wash. 309, 2 Pac. (2d) 741.)

See, also, *Enright v. Heckscher*, 240 Fed. 863; *In re Webster Loose Leaf Filing Co.*, 240 Fed. 779; *Burns v. National Mining, Tunnel & Land Co.*, 23 Colo. App. 545, 130 Pac. 1037; *Hotaling v. Hotaling*, 193 Cal. 368, 56 A. L. R. 734, 224 Pac. 455; *De Moulin v. Magnesite Refractories Co.*, 186 Cal. 128, 199 Pac. 42; *Oceano Beach Resort Co. v. Clark*, 106 Cal. App. 582, 289 Pac. 950; *Cardin Bldg. Co. v. Smith*, 125 Okl. 300, 258 Pac. 910; *Fields v. Victor Building & Loan Co.*, 73 Okl. 207, 175 Pac. 529; *Laybourn v. Wrape*, 72 Colo. 339, 211 Pac. 367; *Flanagan v. Flanagan Coal Co.*, 77 W. Va. 757, 88 S. E. 397; *Holcomb v. Forsyth*, 216 Ala. 486, 113 So. 516; *Weil v. Richardson*, 224 Mo. App. 990, 24 S. W. (2d) 175.

In view of the charges made by appellants that Baumgartner and Bailey have heretofore concealed the amount of indebtedness due them, leaving the inference that the amount claimed is not due, it would appear necessary that a complete accounting be had as between them and the corporation before the litigation can properly be settled. We have therefore concluded that appellants are entitled to the following relief: (1) An accounting as to all transactions heretofore had between respondents Baumgartner and Bailey and the Delaware Mines Corporation, and a complete determination of all amounts received by them on any and every account, all credits due, and the amount now due each; (2) an accounting by Baumgartner for the amount

received upon the resale of the compressor and motor, this to be credited to the Delaware Mines Corporation and taken into consideration and reconciled with the general accounting; (3) a decree canceling all deeds, bills of sale and other instruments of transfer made by the Delaware Mines Corporation to the Associated Mines Corporation, directing the officers of the latter company to execute instruments of retransfer to the Delaware Mines Corporation, and deliver them together with all property so acquired by it to the Delaware Mines Corporation, and directing the return to the persons entitled thereto of all stock in the Delaware Mines Corporation heretofore turned over to the Associated Mines Corporation; (4) a decree forever enjoining and restraining the officers of either corporation from assessing or attempting to assess appellants' stock in the Delaware Mines Corporation, or from in anywise interfering with or attempting to burden their *pro rata* interest in the capital and property of that company.

The lower court is directed to enter a decree embodying the relief which we have indicated together with that heretofore granted relative to maintenance of corporate records. The matter of the appointment of a receiver is left open, to be determined by the lower court upon further application of either party. In the final adjustment, the nonconsenting stockholders should not be charged in any manner with any part of the expense incident to the attempted reorganization, but it is the purpose of this decision that they be placed in the *status quo* as it existed prior to the attempted transfer.

The cause is reversed and remanded, with instructions as aforesaid. Costs are awarded to appellants.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.