286 P.2d 245

Jane B. CARTER, also known as Mrs. J. W. Carter, Plaintiff and Respondent,

v.

George S. SPENCER, George J. Cannon, Laurence E. Ellison, James E. Ellison, Morris H. Ellison, J. Wm. Knight, Defendants and Appellants,

and

Ellison Ranching Company, a Utah corporation and Ellison Ranching Company, a Nevada corporation, Defendants.

No. 8249.

Supreme Court of Utah.

July 8, 1955.

J. D. Skeen, Salt Lake City, for appellants.

Calvin L. Rampton, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal by the defendant directors of defendant corporation from an adverse judgment in an action involving the validity of the reorganization of the corporation, brought by a nonassenting stockholder thereof.

The Ellison Ranching Company, the corporation involved herein, was first organized in the year 1910, under the laws of the state of Utah, for the purpose of acquiring ranching property in the state of Nevada and conducting a ranching business. As thus organized it was at the time here in question, in May of 1952, solvent and in no financial distress.

On May 19, 1952, notice was mailed to its stockholders, by its president, of a special meeting to be held May 29, 1952, for the purpose of considering and acting upon

a resolution providing for the reorganization of the corporation under the laws of the state of Nevada. The resolution, attached to the notice, proposed that the stockholders of the corporation organize a Nevada corporation of the same name; that their stock in the Utah corporation be exchanged share for share for the stock of the Nevada corporation; and that all of the assets of the Utah corporation be transferred to the Nevada corporation, the latter to assume all of the former's debts.

The evidence as to what occurred at the meeting is hopelessly in conflict, due in part to the brevity and indefiniteness of the minutes taken of the meeting. Plaintiff, a stockholder of the corporation, represented at the meeting by her son, James W. Carter, as her duly appointed and constituted proxy, contends that she refrained at the meeting from assenting to the corporation's reorganization and voiced her opposition thereto. Appellants, the directors of the corporation, argue on the other hand that the plaintiff, through her proxy at the meeting, voted *for* the reorganization.

In either case, the remaining stockholders present at the meeting approved the reorganization, which in due course was carried into effect, with no provision made for the payment for the stock of any dissenting stockholders, except by the transfer of stock in the Nevada corporation.

Plaintiff then brought this action against the defendant directors and against both the old and new corporation, alleging that the act of the defendant directors in transferring the property of the Utah corporation to the Nevada corporation without consideration other than stock in the Nevada corporation and without the consent and against the will of the plaintiff, was ultra vires; that in making such conveyance the individual defendants were guilty of a breach of their trust as directors of the Utah corporation; and that such conveyance and such breach of trust constituted a conversion to a use not in fulfillment of their trust of a proportionate share of the assets of the plaintiff in the Utah corporation. Plaintiff demanded judgment declaring the conveyance to the Nevada corporation void, and ordering the defendants to reconvey the assets to themselves in trust for liquidation and distribution of the proceeds among the stockholders of the Utah corporation according to their stock holdings, or in the alternative, for judgment against the individual defendants for conversion of plaintiff's "rights" in the property of the dissolved Utah corporation.

The trial court, sitting without a jury, found for the plaintiff, under her alternative prayer, from which judgment defendant directors have taken this appeal.

Appellants argue first, that the plaintiff voted for the reorganization of the corporation and is thereby estopped from attacking its validity.

**4**

■ This contention must fail for the reason that there exists competent evidence in support of the trial court's findings of fact in this respect: Namely, that the plaintiff, through her proxy at the meeting, voted in favor of a resolution to dissolve the Utah corporation; that she declined to vote on a resolution to organize the Nevada corporation and to transfer to it the assets of the Utah corporation; and *that she stated her unwillingness to accept stock in the Nevada corporation for her stock in the Utah corporation.* This finding of fact is supported by the following testimony of James W. Carter, plaintiff's proxy:

"Q. Did you make any statement in meeting about whether or not you as a representative of your mother were willing to subscribe to this new corporation under these articles? (Discussion between court and counsel.) A. Yes.

"Q. And what did you state in that regard? A: I stated that she would not—I stated that I couldn't vote to subscribe to the new corporation if it were an assessable share corporation without consulting her first.

"Q. And was there any statement made by any member of the board at that time as to whether they needed your vote or not? A. Yes.

"Q. By whom, and what did he say? A. Well, Mr. Knight was the one who made the statement. He said —I don't know whether I can give it in his words.

"Q. Give it in substance. Yes, we understand. A. But he said in substance in the form of a question to the president, he said, 'We don't need his vote on this, do we? Can't we go ahead without his consent here?' And Morris Ellison said, 'We have been advised that we can, that we can go ahead'—let's see. He said, 'We have been advised that we can,' and then he specified with what majority, it was either a majority of a two-thirds or three-fourths majority vote of the stockholders, they could proceed with this organization.

"Q. And did they then proceed to vote on the matter? A. Yes, after some more discussion.

"Q. And you declined to vote in favor of the articles, did you not? A. Yes, I declined to vote and so recorded in this [the minutes of the meeting]."

Appellants next argue that they, as the individual directors of the Utah corporation, are not liable to the plaintiff for breach of trust or at all, because (1) the reorganization was directed by the *stockholders*—the President and Secretary, but not the directors, were authorized to consummate it; and (2) there is no allegation

or proof of any wrongful or unauthorized act on the part of the directors or any of them.

That the first point of this argument cannot stand is evident from the following facts: On May 23, 1952, six days prior to the special stockholders' meeting called to vote upon the proposed reorganization, defendant directors held a directors' meeting, the minutes of which read in part as follows:

"Morris H. Ellison discussed the proposed change in place of incorporation from Utah to Nevada and read proposed Articles of Incorporation for the new company and J. Wm. Knight moved, seconded by Laurence E. Ellison, that they be recommended substantially as read for acceptance by the stockholders in a special meeting called for Thursday May 29th. The motion unanimously passed."

Further, at the special stockholders' meeting at which the reorganization was voted upon, the only persons present besides James W. Carter and a Mr. W. M. Smoot, were four of the defendant directors, who held a directors' meeting immediately after the adjournment of the stockholders' meeting.

Finally, the incorporators of the Nevada corporation, and likewise the directors thereof listed in its articles of incorporation, included the defendant directors of the Utah corporation, plus two additional directors.

In face of these facts, appellants can hardly disclaim responsibility for the transfer of the assets of the Utah corporation to the Nevada corporation under the reorganization. Moreover, such an act of transfer is in the highest sense an exercise of the corporate power of the corporation and therefore, according to statute,[1] must be by the board of directors.

The second point of appellants' above-stated argument is also untenable. Plaintiff alleged in her complaint that the act of the defendant directors in transferring the property of the Utah corporation to the Nevada corporation was ultra vires, that in making such conveyance the defendant directors were guilty of a breach of their trust as directors of the Utah corporation. The trial court could reasonably have upheld this allegation upon its finding that plaintiff was a dissenting stockholder, and upon the evidence of defendant directors' participation in, and engineering of, the reorganization. The rule is well established, and was not questioned by appellants in this appeal, that a corporate reorganization of the type here involved requires the

1. Section 16-2-21, U.S.C.A.1953.

**6**

stockholders' unanimous consent, unless otherwise provided by statute, at least where the corporation is solvent and a going concern, as was the case here.[2]

Appellants' remaining arguments relate to the determination of plaintiff's damages. Appellants contend (1) that plaintiff should not be entitled to "the speculative value of her share of the assets obtained by estimating the value thereof and dividing the same by the number of shares"; (2) that "The appraisers appointed pursuant to stipulation failed to make a legal appraisal, but on the contrary, arrived at a valuation of the ranches by application of an unsound formula"; and (3) that "The federal income tax on sale by corporation must be deducted."

 The first of these contentions would seem to be answered by the stipulation entered into by the parties, as announced by the trial court during the course of the trial:

"The Court: Now, so that the clients who were not in chambers and who haven't heard the discussion we have been having may understand, this court has not undertaken to dodge its responsibility or to put any thumb screws on counsel. All I have done is to point out ways that I thought the parties might get together, and I understand

that counsel are in agreement now, and I suppose their clients understand—if they don't, we will put it in the record so there can be no misunderstanding about this matter—and I understand now that you gentlemen have agreed upon three appraisers who may determine the fair market value of the assets of this company as of June 2, 1952; that when that ascertainment is made, the court will apply the percentage of stock held by this plaintiff to the total outstanding at that time and award to her that percentage of all assets as found by the three appraisers; that costs of making the appraisement will be assessed by the court when the appraisement has been made; that if any money is required to be advanced to these appraisers, it would be advanced by the defendant and credit given to the defendant for that upon any final settlement."

Thus, it would seem that the appellants stipulated to the type of valuation adopted by the trial court, and that the conclusion may therefore be drawn that this argument of appellants concerning plaintiff's measure of damages is without merit.

Likewise, this court is not persuaded that it should disturb the appraisers' valuation, made pursuant to the above-quoted stipula-

2. Whicher v. Delaware Mines Corp., 52 Idaho 304, 15 P.2d 610, 613; Moore v. Los Lugos Gold Mines, 172 Wash. 570, 21 P.2d 253, 260; Thompson on Corporations (3d Ed.) Sec. 5988.

tion. Note "2" to the appraisal inventory reads in part as follows:

"* * * The ranches were appraised upon a 'unit' basis, a unit being the ability of a ranch to support a cow or five ewes for twelve months. When an operation of this type is valued on a unit basis, the valuation would include the following items contained in the inventory: Horses, milk, cows, hay, supplies, range rights, vehicles, implements and improvements. It was determined that the Ellison Ranching Company had an estimated carrying capacity of 7,200 units at $94.00 per unit."

Appellants have failed to point out in what respect, if any, the formula used by the appraisers is unsound.

As to appellants' third point, we are of the opinion that appellants have foreclosed their right to raise the same by reason of the stipulation. But assuming that appellants have not been foreclosed by their stipulation, we are of the opinion that probably no federal income tax would have been assessable to the corporation on a sale and distribution by the stockholders.[3]

Respondent contends that the defendant directors should not be allowed to appeal this judgment as it is in effect a consent judgment. Believing as we do that there is some merit to this contention, we never-

theless refrain from passng upon the point in view of the disposition made by us of the case.

Affirmed, with costs to respondents.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

---

3. United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251.